**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| A. MATHEW, J. AFFHOLTER,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITIGROUP GLOBAL MARKETS, CITADEL SECURITIES LLC, FTX, ALAMEDA CAPITAL, ANTARA CAPITAL, NEW YORK STOCK EXCHANGE, SUSQUEHANNA INTERNATIONAL GROUP, MUDRICK CAPITAL, VIRTU FINANCIAL, FOX BUSINESS, NASDAQ, GOLDMAN SACHS GROUP, UNKNOWN DEFENDANTS,<br><br>        Defendants,<br><br>AMC ENTERTAINMENT, HYCROFT MINING HOLDING CORPORATION, DTCC, FINRA,<br><br>        Nominal Defendants. | Case No. 23-cv-12302-FDS |

**SPECIALLY APPEARING DEFENDANT VIRTU FINANCIAL, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
THE FIRST AMENDED CIVIL ACTION COMPLAINT**

DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C.  20005

1251 Avenue of the Americas, 21st Floor
New York, New York  10020-1104

4870 Sadler Road, Suite 301
Glen Allen, Virginia  23060

*Attorneys for Specially Appearing Defendant
Virtu Financial, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

Preliminary Statement...................................................................................................... 1

Allegations in the Complaint ........................................................................................... 3

Argument ........................................................................................................................ 8

    I.       The 1934 Act Claims Fail as a Matter of Law ..................................................... 8

          A.      Plaintiffs Lack Standing to Bring 1934 Act Claims.................................... 9

          B.      Plaintiffs Fail to Plead Loss Causation ..................................................... 10

          C.      Plaintiffs Fail to Plead that Virtu Engaged in Any Misconduct .................11

                1.      Misrepresentation and Omission Claims ......................................11

                2.      Market Manipulation Claims ....................................................... 12

          D.      Plaintiffs Fail to Sufficiently Plead that Virtu Acted with Scienter .......... 15

    II.      The 1933 Act Claims Fail as a Matter of Law ................................................... 17

    III.     The Fiduciary Duty Claims Fail as a Matter of Law ........................................... 18

    IV.    The Remaining Claims against Virtu Fail as a Matter of Law............................. 19

Conclusion ..................................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................17

*ATSI Commc's, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..................................................................9, 13, 14, 16

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975)................................................................................................10

*Brooks v. Black*,
   No. 85-cv-4505, 1986 WL 2705 (D. Mass. Jan. 14, 1986)....................................19

*Cent. Bank of Denver v. First Interstate Bank*,
   511 U.S. 164 (1994)................................................................................................17

*Cohen v. Stevanovich*,
   722 F. Supp. 2d 416 (S.D.N.Y. 2010).............................................................. *passim*

*Colella v. Children's Hosp. Corp.*,
   No. 14-cv-11687, 2014 WL 12581775 (D. Mass. Nov. 4, 2014) ...........................19

*Coyer v. HSBC Mortg. Servs., Inc.*,
   701 F.3d 1104 (6th Cir. 2012) ...............................................................................19

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)............................................................................................9, 10

*Forsberg v. Always Consulting, Inc.*,
   No. 06-cv-13488, 2008 WL 5449003 (S.D.N.Y. Dec. 31, 2008) ...........................18

*Fratus v. Repub.ff W. Ins. Co.*,
   147 F.3d 25 (1st Cir. 1998).....................................................................................19

*Kelley v. Rambus, Inc.*,
   No. 07-cv-1238, 2008 WL 5170598 (N.D. Cal. Dec. 9, 2008)...............................11

*Metro Ambulance, Inc. v. E. Med. Billing, Inc.*,
   Civ. A. No. 13929, 1995 WL 409015 (Del. Ch. July 5, 1995)...............................19

*Metzler Asset Mgmt GMbH v. Kingsley*,
   928 F.3d 151 (1st Cir. 2019)...................................................................................16

*Moldonado v. Dominguez*,
   137 F.3d 1 (1st Cir. 1998) ................................................................................18

*Ok. Firefighters Pension & Ret. Sys. v. Biogen Inc.*,
   --- F. Supp. 3d ---, No. 22-cv-10200, 2023 WL 2693793 (D. Mass. Mar. 29, 2023) ........12, 13

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ........................................................................................18

*Ponsa-Rabell v. Santander Sec. LLC*,
   35 F.4th 26 (1st Cir. 2011) .....................................................................11, 12, 13

*Risley v. Universal Navigation, Inc.*,
   --- F. Supp. 3d ---, 2023 WL 5609200 (S.D.N.Y. Aug. 29, 2023) ..................17, 18

*Scottrade, Inc. v. BroCo Investments, Inc.*,
   774 F. Supp. 2d 573 (S.D.N.Y. 2011) ...............................................................10

*Taylor v. Moscow*,
   No. 13-cv-12675, 2014 WL 2573990 (D. Mass. June 6, 2014) ...............................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................................................16

*Transam. Mortg. Advisers, Inc. v. Lewis*,
   444 U.S. 11 (1979) ..........................................................................................19

*Trivedi v. G.E. Co.*,
   No. 19-cv-11862, 2020 WL 9744754 (D. Mass. Aug. 13, 2020) ...........................10

*UBS Fin. Servs., Inc. v. Aliberti*,
   133 N.E.3d 277 (Mass. 2019) ..........................................................................19

*Xu v. Direxion Shares ETF Trust*,
   No. 22-cv-5090, 2023 WL 5509151 (S.D.N.Y. Aug. 25, 2023).........................9, 13

**Statutes**

15 U.S.C. § 77a ...................................................................................................1, 17, 18

15 U.S.C. § 78c(26) ....................................................................................................20

15 U.S.C. § 78f(b) .......................................................................................................20

15 U.S.C. § 78i(a)(2) ..........................................................................................9, 12, 15

15 U.S.C. § 78i(f) ..........................................................................................................9

15 U.S.C. § 78j...................................................................................................... *passim*

15 U.S.C. § 78s(b)-(c) ..................................................................................19

15 U.S.C. § 78u-4 ..............................................................................1, 11, 15, 16

28 U.S.C. § 1658(b)(2) ...................................................................................9

Investment Advisers Act of 1940 § 206 ..............................................19, 20

Racketeering Influence and Corrupt Organizations Act ..........................1, 3, 19

Securities Exchange Act of 1934 § 14 ..................................................11

Securities Exchange Act of 1934 § 18 ..................................................11

Securities Exchange Act of 1934 § 17(a) ..............................................18

**Rules**

17 C.F.R. § 242.200 ......................................................................14

17 C.F.R. § 242.203(b)(2)(iii) ......................................................14

SEC Rule 10b-21 ..........................................................................12

SEC Rule 10b-5 ..................................................................9, 10, 11

Fed. R. Civ. P. 8 ....................................................................9, 17

Fed. R. Civ. P. 9(b) ..........................................................1, 8, 11, 12

Fed. R. Civ. P. 12(b)(6) ..............................................................1

Reg. Best Interest, Exch. Act Rel. No. 34-86031,
    84 Fed. Reg. 33318 (June 5, 2019) ..........................................19

**Other Authorities**

SEC, *Division of Market Regulation: Responses to Frequently Asked Questions Concerning Regulation SHO* at Ques. 7.1 (mod. Oct. 15, 2015), available at
    http://www.sec.gov/divisions/marketreg/mrfaqregsho1204.htm ..........................14

SEC, *"Naked" Short Selling Antifraud Rule*, SEC Rel. 34-58774, 73 Fed. Reg. 61666-01,
    61671, 2008 WL 4600724 (Oct. 17, 2008) ..........................................4, 12

Specially appearing defendant Virtu Financial, Inc. ("Virtu") respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Civil Action Complaint (ECF Doc. No. 20 (the "complaint" or "Compl.")) pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA") (the "Motion").  For the reasons set forth below, the Court should grant the Motion and dismiss the complaint against Virtu entirely and with prejudice.[1]

### Preliminary Statement

At 516 paragraphs sprawled across 211 pages – plus 221 pages across 37 exhibits – *pro se* Plaintiffs' complaint is a *cri de coeur*, a screed, a manifesto, a call to action.  But it is not a viable legal pleading against any of the 12 named defendants and four nominal defendants (collectively, "Defendants"), least of all Virtu.  Therefore, the Court should dismiss it.

Plaintiffs, alleged common stock shareholders of nominal defendant AMC Entertainment Holdings, Inc. ("AMC"), principally complain that various financial industry participants, including Defendants, colluded to manipulate the market for AMC securities over seven years, thereby causing Plaintiffs a "loss of investment value."  Plaintiffs claim that the alleged conduct violates not only the antifraud and anti-market manipulation provisions of the Securities Exchange Act of 1934 (the "1934 Act"), but also the Securities Act of 1933 (the "1933 Act"), the Sherman and Clayton antitrust laws, the Racketeering Influence and Corrupt Organizations Act ("RICO"), at least two criminal statutes, five FINRA rules, and various other laws and regulations.  Plaintiffs also assert that Defendants breached fiduciary duties allegedly owed to Plaintiffs.

---

[1] Unless stated otherwise, "¶" refers to a paragraph in the complaint; all emphasis is added; and all internal citations and quotations marks are omitted.

The complaint's irremediable problems are many.  To have standing to bring their 1934 Act claims, Plaintiffs must allege that they bought or sold AMC securities.  But they do not do that.  That failure is a sufficient ground to dismiss the 1934 Act claims.  (*See* Argument Point I.A.)  Even if standing were not a bar, the complaint fails to plead facts that establish the element of loss causation – that is, a causal connection between the alleged loss and the alleged misconduct.  Specifically, the complaint lacks any allegation that Plaintiffs bought or sold AMC securities, or when, or the price at which they supposedly traded, never mind any allegation connecting their unalleged trades to Virtu's alleged misconduct.  (*See id.* Point I.B.)  Beyond that, the complaint lacks any fact allegation showing that Virtu misrepresented anything or engaged in market manipulation, let alone that Virtu acted with deceitful intent (scienter).  Instead, Plaintiffs regurgitate a list of acts that they admit are lawful and can serve legitimate business purposes, but conclude without supporting facts that Virtu (or "Defendants") engaged in those acts to intentionally manipulate AMC securities prices.  That is wholly insufficient as a matter of law to state a claim under the 1934 Act.  (*See id.* Point I.C & D.)

The complaint's other claims fare no better.  The claims based on the alleged sale of unregistered securities fail as a matter of law because Plaintiffs do not allege that they bought such securities or that Virtu was their statutory seller.  (*See id.* Point II.)  The fiduciary duty claims against Virtu fail as a matter of law because Plaintiffs do not allege a special relationship of trust and confidence with Virtu.  Nor could they.  Virtu is a market maker, as Plaintiffs admit. Its "customers" are institutional investors and retail brokerage firms.  Virtu does not directly serve retail investors like Plaintiffs, and Plaintiffs do not allege that they were Virtu customers. (*See id.* Point III.)  The antitrust claims are precluded under Supreme Court precedent because they are in tension with the securities laws, which control this dispute.  In any event, as pleaded,

the antitrust claims fail as a matter of law.  The RICO claims are barred by the PSLRA, which

precludes RICO claims for conduct that could give rise to federal securities law claims.  In any

event, as pleaded, the RICO claims also fail as a matter of law.  Finally, no private right of action

exists for the alleged violations of Title 18, which is the federal criminal code, or for FINRA

rules.  (*See id.* Point IV).

For all those reasons, the reasons set forth below, and the reasons set forth in the

motions to dismiss filed by the other Defendants (to the extent not in conflict with Virtu's), the

Court should dismiss the complaint against Virtu entirely and with prejudice.

### Allegations in the Complaint

Plaintiff A.P. Mathew alleges that he is "domiciled" in Massachusetts and "has

been a verified shareholder of AMC since spring 2021."  ¶ 27.  Plaintiff J. Affholter alleges that

he "resides" in Michigan and "has been a verified AMC Shareholder since February 2021."  ¶ 28.

What Plaintiffs mean by "shareholder" is unclear, but they apparently hold (or held) "significant

investments in AMC's common stock" at some point in the last three years.  ¶ 454.  They seek

"compensatory damages in an amount to be proven at trial, including loss of investment value

and any other economic harm suffered" in the amount of $765,630 (Mathew) and $34,000

(Affholter).  Compl., Prayer for Relief ¶ 2.  The basis for damages is unclear given that neither

alleges that he bought or sold AMC securities or when he traded AMC securities.

Plaintiffs seek damages from Defendants for alleged misconduct that, Plaintiffs

claim, artificially depressed the price of AMC common stock.  *See, e.g.*, ¶¶ 1, 12, 51, 82-83, 86,

99, 102, 279, 357, 465-466, 478, 500.  The alleged misconduct includes misrepresentations or

omissions of material fact and certain acts that Plaintiffs characterize as market manipulation.

¶ 247.  Defendants allegedly engaged in that misconduct to avoid losing money on their

supposed short positions in AMC securities. *See, e.g.*, ¶¶ 56, 73-75, 81, 114, 147-149, 337, 344, 361, 364. That narrative appears to be rooted in the 2021 meme stock craze, when retail investors piled into AMC common stock to bid up its price, in turn squeezing AMC short sellers. *See* ¶ 73. Although the craze occurred three years ago, Plaintiffs allege that "defendants … overtly engag[ed] in a deliberate and sophisticated conspiracy to monopolize the trade of AMC stock" over a seven-year period – "the Relevant Period of January 2016-2023." ¶ 1.

Virtu is alleged to be a "Market Maker" (¶ 22; *see also* ¶¶ 38, 284), and a "hedge fund" or "AMC short hedge fund." ¶¶ 439, 437; *see also* ¶ 344. In fact, Virtu is a market maker, not a hedge fund. Plaintiffs plead no fact to support their assertion that Virtu is a hedge fund, let alone that Virtu shorted AMC securities. Plaintiffs allege that Virtu misrepresented or omitted material facts (*see* ¶¶ 247, 295, 342) and engaged in manipulative acts. *See generally* ¶¶ 247-248; Exs. AF, AH (ECF Doc. Nos. 20-32 & 34). But Plaintiffs fail to allege what Virtu supposedly said or omitted, when, or how it was misleading; and they admit that many of the allegedly manipulative acts are not illegal or manipulative, and that many of their charges are speculative. The allegedly wrongful acts include:

*Naked Short Selling, Failures to Deliver.* Plaintiffs allege that naked short selling is "where the seller does not arrange to borrow the securities [it is selling short]." ¶ 290. They allege that the practice "**could**" lead to a Failure to Deliver (¶ 284; *accord* ¶ 298), meaning the short-seller does not deliver the shorted securities by the settlement date (three days following the trade date). *See* ¶¶ 283, 290. They also allege that Failures to Deliver ("FTDs") "**can** contribute to market instability and **potential** manipulation of stock price" (¶ 298) and "**could potentially** have inflicted substantial financial damage upon the plaintiffs." ¶ 302. From that, and without supporting facts, Plaintiffs conclude that Virtu "manipulated the market … to cause

an increase in FTDs" (¶ 290; *accord* ¶¶ 294, 305), caused FTDs by engaging in naked short selling (*see* ¶¶ 12, 290, 294, 300-301, 303, 305), "misrepresented [its] ability or intent to deliver the necessary securities by the settlement date" (¶ 295; *see also* ¶ 304 (alleged supply and demand misrepresentations)), and "utiliz[ed] complex trading strategies involving options and dark pool trades to hide" FTDs. ¶ 285. Plaintiffs do not allege facts showing that Virtu actually engaged in naked short selling or other complex trading strategies, the volume, price, or date of those unidentified trades, the number of FTDs that supposedly resulted, or that Plaintiffs traded at prices impacted by the alleged misconduct. As for the complex trading strategies, Plaintiffs admit they are "controversial" but "**not illegal per se**" (¶ 285) and that Virtu's trading strategies "operat[e] **within the bounds of the law**." ¶ 289.

       *Spoofing*. Plaintiffs allege that Virtu engaged in spoofing, or "placing orders with the intention of canceling them before they can be executed, creating a false impression of market sentiment." ¶ 275; *see also* ¶¶ 252, 460. Virtu allegedly did this as "part of a deceptive strategy to manipulate the market price of AMC stock." ¶ 498; *see also* ¶¶ 411, 492. From January 2020 to April 2023, "Defendants," not Virtu specifically, allegedly "cancelled orders totaling 3,955,620,000 shares." ¶ 498. Although Plaintiffs allege that "[t]he scale and pattern of cancellations **suggest** a strategic effort to create false or misleading appearances of market activity for AMC shares" ( ¶ 499), they acknowledge that this activity also could be consistent with "a **legitimate and legal** high-frequency trading strategy" or the "**unintended** consequences of" "automated trading algorithms." ¶¶ 260-261. They also acknowledge that "[o]rder cancellation itself **is not illegal**," and that "[m]arket makers," like Virtu, "cancel orders for **various legitimate reasons**." ¶ 410. Although they allege that "videographic evidence " (¶ 263 & Ex. V (ECF Doc. No. 20-22)), "detailed trading data" (¶ 265), and "technical analysis" (¶ 261)

support their claims, they present none of that material in the 432 pages of allegations and exhibits they filed.  Nor do they plead any fact showing that Virtu placed any AMC securities orders, let alone orders it did not intend to execute, or that Plaintiffs traded at prices impacted by the alleged misconduct.

      *Dark pool trading*.  Plaintiffs allege that dark pools are "private exchanges for trading securities" that "are not accessible by the investing public."  ¶ 372.  They allege that Virtu misrepresented or omitted material information about its dark pool trading (*see* ¶¶ 372, 383, 388); "intentionally manipulated the price of AMC stock through dark pools" (¶ 373; *accord* ¶ 496); and "use[d] dark pools to negate fair supply and demand of AMC stock on the exchanges."  ¶ 405; *see also* ¶¶ 248, 510.  Plaintiffs allegedly made trading decisions based on "distorted conditions" supposedly caused by dark pool trading, "which then resulted in real and quantifiable financial harm (see exhibit AI)."  ¶ 454; *accord* ¶ 456.  But Plaintiffs plead no fact showing that they actually traded AMC securities during the Relevant Period, let alone that they traded when prices supposedly were distorted due to Virtu's alleged dark pool trading; and Exhibit AI says nothing about Plaintiffs' AMC trading.  Plaintiffs also plead no fact showing that Virtu traded AMC securities on any dark pool, let alone traded improperly, and they walk back their assertion that Virtu acted with wrongful intent.

¶ 389 ("Evidence of intentional manipulation of price through dark pools … **could demonstrate** wrongful intent or knowledge of wrongdoing on the part of … Virtu.").

      *Limit Up Limit Down ("LULD") Rule*.  Plaintiffs allege that the LULD rule "is designed to prevent trades in individual securities from occurring outside of specified price bands."  ¶ 361.  The LULD Committee is "tasked with … setting [the] price bands."  ¶ 334; *accord* ¶ 351.  Virtu allegedly is "represented on the committee" and "coordinat[ed]" with the

committee "to manipulate" and artificially "suppress" AMC securities prices to "benefit" its alleged "short positions."  ¶¶ 333, 338, 344, 351; *see also* ¶¶ 248, 357, 465-466.  The alleged manipulation included "submitting false or misleading reports to the LULD Committee to influence the price bands of AMC" securities (¶ 342) and "wielding undue influence" over the LULD Committee.  ¶ 353; *accord* ¶ 351.  Additionally, "market participants" (¶361) and "short hedge funds" (¶ 364), not Virtu specifically, allegedly paid the NYSE "to call a LULD halt" in AMC securities (¶ 361; *accord* ¶ 359 at ¶ 3) or "accepted payments … to call volatility halts." ¶ 504.  Again, however, Plaintiffs plead no specifics to support their accusations.  They do not identify any report that Virtu allegedly made to the LULD Committee, when it supposedly was made, or any fact showing that it report was misleading.  They do not identify what influence Virtu supposedly had over the LULD Committee, when or how it wielded that influence, or why the influence was undue, let alone unlawful.  They do not even try to connect Virtu to any payment to halt AMC securities trading,[2] perhaps because their claim is speculative, as even they admit.  *See* ¶¶ 358 (alleging that the LULD allegations present a "picture of **potential** misconduct."); 359 at ¶ 4 ("[t]rading data," which Plaintiffs do not identify, "suggests **possible** undue influence").

       *Short-and-distort campaign*.  Plaintiffs allege that Virtu, among others, engaged in a "monetary exchange" with Fox Business News and others to run stories to depress AMC common stock prices.  ¶ 439; *see also* ¶¶ 248, 437-446, Ex. AF (ECF Doc. No. 20-32) at 10

---

[2] Plaintiffs allege that Exhibit A contains "indications of a potential 'quid pro quo' relationship leading to these halts."  ¶ 359 at ¶ 3.  Exhibit A are excerpts from AMC credit agreements that AMC attached to its Form 10-K. *See* Ex. A (ECF Doc. No. 20-1).  Plaintiffs allege that Exhibit S contains an admission by a hedge fund manager that he paid "brokerage in order to call halts against retail shareholders."  ¶¶ 347, 360.  Exhibit S is a screen-shot of an undated tweet that references no securities, let alone AMC securities.  *See* Ex. S (ECF Doc. No. 20-19).  Exhibit AG purports to be a diagram of alleged LULD Committee and dark pool misconduct.  *See* ECF Doc. No. 20-33, at 4. Virtu's name appears nowhere on Exhibits A, S, or AG.

("Citadel and Virtu conspired with Fox Business to destroy AMC Stock interest by deliberating [sic] producing misinformation, bashing, and other forms of stock manipulation.").  The apparent basis for th0se allegations is a 25-page collage of tweet screen-shots and graphics of undisclosed provenance, set forth in Exhibit Z.  *See* ECF Doc. No. 20-26.  But Exhibit Z is devoid of anything showing that Virtu was involved in the alleged campaign, and Plaintiffs fail to identify any news report that Virtu supposedly procured, perhaps because Plaintiffs themselves admit that their short-and-distort claim is "**speculation**."  ¶ 446.

The alleged misconduct supposedly violated federal securities laws and regulations, federal antitrust laws, the federal criminal code, and FINRA rules.  Those purported violations, and breach of fiduciary duty claims, are enumerated in the complaint's 11 counts.

<u>Argument</u>

## I.    The 1934 Act Claims Fail as a Matter of Law[3]

To state a misrepresentation claim under Section 10(b) and Rule 10b-5, a plaintiff must plead that a defendant made a misstatement of material fact, with scienter (deceitful intent), that caused the plaintiff to buy or sell a security, and that caused economic loss when the misstatement's falsity was revealed.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).  To state a market manipulation claim under Section 10(b) and Rule 10b-5, a plaintiff must plead that a defendant committed a manipulative act, with scienter, that caused the plaintiff to incur damages because it bought or sold a security in "reliance on an assumption of an efficient market

---

[3] The Court is familiar with the applicable pleading standards.  To conserve resources, Virtu incorporates by reference the Legal Standard set forth in the memorandum of law submitted in support of Defendant Citadel's motion to dismiss (the "Citadel Brief").  As shown below and in Points I and II of the Citadel Brief, the complaint fails to state a plausible claim against Virtu and falls far short of even Rule 8's standard, let alone the heightened pleading standards of Rule 9(b) and the PSLRA.

free of manipulation." *ATSI Commc's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007) (dismissing claims).

To state a claim for market manipulation under Section 9(a)(2),[4] a plaintiff must plead that the defendant, acting with scienter engaged in "a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security … for the purpose of inducing the security's sale or purchase by others." *Xu v. Direxion Shares ETF Trust*, No. 22-cv-5090, 2023 WL 5509151, at *6 (S.D.N.Y. Aug. 25, 2023) (dismissing claims). The violation must be "willful" and "the price of the security that is purchased or sold" must "be affected by the violation." *Id*.

Plaintiffs fail to plead, or plead sufficiently, elements of their 1934 Act claims.[5]

### A.     Plaintiffs Lack Standing to Bring 1934 Act Claims

To plead a 1934 Act claim, a plaintiff must allege that it bought or sold securities. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975) (holding that standing to pursue Rule 10b-5 claims is limited to actual purchasers and sellers). A plaintiff that fails to allege a purchase or sale lacks standing to pursue 1934 Act claims. *See Trivedi v. G.E. Co.*, No. 19-cv-11862, 2020 WL 9744754, at *6 (D. Mass. Aug. 13, 2020) (Rep. & Rec.) (dismissing Section 10(b) claim because plaintiff did "not allege … that she was either a purchaser or a seller of GE securities."), *adopted*, 2021 WL 2229088, at *1 (D. Mass. May 27, 2021), *aff'd*, 2022 WL 1769136, at *1 (1st Cir. May 3, 2022); *Scottrade, Inc. v. BroCo Investments, Inc.*, 774 F. Supp. 2d 573, 582 (S.D.N.Y. 2011) (dismissing Section 9(a) and 10(b) claims). Here, the complaint

---

[4] Section 9(a)(2) proscribes manipulative conduct. Section 9(f), which Plaintiffs never mention, provides a private remedy for a Section 9(a)(2) violation. *See* 15 U.S.C. § 78i(f).

[5] The alleged misconduct supposedly occurred from January 2016 through 2023. (*See* page 4, above.) The statute of repose bars any 1934 Act claim against Virtu that accrued on or before November 16, 2018, that is, five years before Plaintiffs filed the complaint on November 16, 2023. *See* 28 U.S.C. § 1658(b)(2).

contains no allegation that Plaintiffs bought or sold AMC securities.  At most, Plaintiffs allege

that they were AMC shareholders since February 2021 (Affholter) and the spring of 2021

(Mathews), as supposedly verified by the Delaware Chancery court in the Derivative Action.

(*See* page 3, above.)  But status as AMC shareholders for derivative suit purposes, without more,

does not establish standing to bring 1934 Act claims, and Plaintiffs do not plead more.  Plaintiffs

lack standing to bring their 1934 Act claims.

### B.        Plaintiffs Fail to Plead Loss Causation

To plead a 1934 Act claim, a plaintiff must allege a "causal connection" between

the alleged fraud and their alleged losses.  *See Dura Pharms.*, 544 U.S. at 347; *Cohen v.

Stevanovich*, 722 F. Supp. 2d 416, 430-433 (S.D.N.Y. 2010) (dismissing Section 9(a)(2) and

10(b) claims).  Plaintiffs fatally fail to plead that causal connection.  They do not allege that they

bought or sold AMC securities, let alone detail the date or price of any of their unidentified AMC

securities trades, information plainly in their possession.  *Cohen* is directly on point.  The court

dismissed market manipulation claims because the plaintiffs did not plead loss causation.  *See id.*

at 433.  They alleged that the defendants had manipulated the price of a company's shares.  But

they never alleged that they sold their shares.  *See id*. at 431.  The court held that even assuming

"some Plaintiffs sold some or all of their shares," they failed to allege, as "required," "the

amount of stock they purportedly sold, the dates on which the stock was sold, or the price

initially paid and then received for any stock;" and they failed to allege that any loss "was caused

by any [defendants'] supposed misconduct."  *Id*.  Rather, they "rest[ed] on conclusory allegations

that they … were … constrained to sell their shares at a loss."  *Id*.  Plaintiffs here stand in the

same shoes as the plaintiffs in *Cohen*; or worse, because they do not even allege that they sold at

a loss.  *A fortiori*, they too have failed to "allege … a requisite element of their federal claims."  *Id.* at 433.[6]

### C.     Plaintiffs Fail to Plead that Virtu Engaged in Any Misconduct

#### 1.     Misrepresentation and Omission Claims

To plead a misrepresentation claim under Section 10(b) and Rule 10b-5, a plaintiff must satisfy the PSLRA requirement that it "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1); *accord Ponsa-Rabell v. Santander Sec. LLC*, 35 F.4th 26, 33 (1st Cir. 2011) (affirming dismissal).  Because the claim sounds in fraud, a plaintiff also "must plead the circumstances of the fraud with particularity pursuant to Rule 9(b), meaning it must allege the 'time, place, and content of the alleged misrepresentations.'"  *Id.* at 33-34.  Courts dismiss complaints that do not satisfy those standards.  *See, e.g.*, *Ok. Firefighters Pension & Ret. Sys. v. Biogen Inc.*, --- F. Supp. 3d ---, No. 22-cv-10200, 2023 WL 2693793, at \*8 (D. Mass. Mar. 29, 2023) (holding that the complaint did not specify why the alleged misstatements were false); *Cohen*, 722 F. Supp. 2d at 427 ("Plaintiffs have failed to identify any misleading statements or omissions made by or attributed to any [defendant].").  Here, the complaint does not satisfy the pleading standards.  Plaintiffs allege that Virtu "submit[ted] false or misleading reports to the LULD Committee" (¶ 342; *accord* ¶ 346) and made "false representations about market supply and demand."  ¶ 304.  But

---

[6] Plaintiffs' loss causation allegations also are inconsistent, which is an independent basis to dismiss.  *See Kelley v. Rambus, Inc.*, No. 07-cv-1238, 2008 WL 5170598, at \*17 (N.D. Cal. Dec. 9, 2008) (dismissing Section 14 and 18 claims).  Plaintiffs' core contention is that Defendants tried to **suppress** the price of AMC securities to avoid a short squeeze.  (*See* pages 3-4, above).  Yet Plaintiffs allege that Defendants' conduct resulted in price **inflation** and price **stability**, in addition to price deflation.  *See* ¶¶ 477 (alleging that Defendants' alleged misconduct "caused Plaintiffs to purchase AMC securities at artificially **inflated** prices"), 504 (same), 493 (alleging that "Defendants" engaged in deceit "to maintain artificially **inflated** and deflated market prices"), 505 (same), 497 ("Defendant's [sic] actions caused artificial **price stability** or suppression, which misled investors.").  Plaintiffs make no effort to square the inconsistencies and leave the Court with no basis to divine their loss causation theory.

Plaintiffs do not specify what statements, reports, or representations Virtu allegedly made, when, or how they were false when made.  That lack of detail guts the misrepresentation claims.[7]

The complaint also fails to allege actionable omissions.  *See* ¶¶ 383, 388.  "[T]o get past 'go' on a motion to dismiss, a plaintiff must first identify a statement made by defendants, show how the omission rendered that statement misleading, and finally establish that there was a duty to disclose the omitted information."  *Santander*, 35 F.4th at 34.  Here, the complaint does not pass "go" because it does not allege that Virtu said anything, let alone anything from which material facts could have been omitted; and it fails to identify a duty that Virtu had to disclose anything to AMC investors.  (*See* Point III, below (showing that Virtu has no fiduciary duty).)  Confronted with similar allegations, courts dismiss omission claims.  *See id.*; *Biogen*, 2023 WL 2693793, at *6 (dismissing claims because the defendants were not alleged to have publicly discussed the topic at all).  The Court should do the same here.[8]

## 2. Market Manipulation Claims

To plead a market manipulation claim under Sections 9(a)(2) and 10(b), a plaintiff must plead facts "showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security."  *ATSI*, 493 F.3d

---

[7] Plaintiffs also allege that Virtu "misrepresented" its "ability or intent to deliver the necessary securities by the settlement date while engaging in naked short selling in violation of Rule 10b-21."  ¶ 295.  The rule makes it "unlawful for any person to submit an order to sell an equity security if such person deceives a broker-dealer, participant of a registered clearing agency, or purchaser regarding its intention or ability to deliver the security on the date delivery is due, and such person fails to deliver the security on or before the date delivery is due."  SEC, *"Naked" Short Selling Antifraud Rule*, SEC Rel. 34-58774, 73 Fed. Reg. 61666-01, 61671, 2008 WL 4600724 (Oct. 17, 2008).  Assuming a private right of action exists for violating the rule, the claim fails as a matter of law because the complaint alleges no fact showing that Virtu placed any sell orders for AMC securities, let alone sell orders it did not intend or was unable to deliver, and no fact showing that Virtu failed to deliver any sell orders it did place.

[8] Plaintiffs also allege that Virtu manipulated the market for AMC securities by "making false representations about market supply and demand" (¶ 304) and failing to "disclose vital information" about trading on its dark pools.  ¶¶ 304, 388.  To successfully plead that claim, Plaintiffs must at least allege what Virtu supposedly said or did not say.  *See Xu*, 2023 WL 5509151, at *10 (dismissing claims because "[n]owhere does the TAC cite to any material misrepresentations or omissions").  Plaintiffs do not do that.

at 100.  A plaintiff must plead those facts with specificity pursuant to Rule 9(b) because the claims sound in fraud.  That means a plaintiff must allege, "with particularity[,] the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants."  *Id.* at 102.  "This test will be satisfied if the complaint sets forth, to the extent possible, what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue."  *Id.*  A complaint fails the test when "it offer[s] no specific allegations that defendants did anything to manipulates the market" and "at best … relies on speculative inference."  *Id.* at 103.  The complaint fails the test.

The naked short selling and FTD allegations (*see* pages 4-5, above) illustrate the problem.  The complaint fails to allege when Virtu engaged in naked short selling, the volume and price of those unidentified trades, the number of FTDs that supposedly resulted, or how such trades artificially impacted the price at which Plaintiffs supposedly traded.[9]  Instead, the complaint moves directly from alleging that naked short selling **can** be manipulative, to asserting (without support) that Virtu engaged in naked short selling, to concluding (again without support) that Virtu did so to manipulate AMC securities prices.  That is some distance to travel, especially when Plaintiffs admit that Virtu's trading strategies were "not illegal per se" (¶ 285), and the SEC has said that FTDs "can occur for a variety of legitimate reasons."[10]  Courts have dismissed similarly thin manipulation claims.  *See ATSI*, 493 F.3d at 103 (holding that the

---

[9] The spoofing and dark pool allegations (*see* pages 5-6, above) suffer from the same defects.  Plaintiffs plead no fact showing that Virtu spoofed AMC securities, the date, price, or volume of the supposed spoofing, or how the supposed spoofing impacted the price at which Plaintiffs supposedly traded.  Likewise, Plaintiffs plead no fact showing that Virtu traded AMC securities on any dark pool, let alone the date, price, or volume of the supposed dark pool trades, or how any such trades artificially impacted the price at which Plaintiffs supposedly traded.

[10] SEC, *Division of Market Regulation: Responses to Frequently Asked Questions Concerning Regulation SHO* at Ques. 7.1 (mod. Oct. 15, 2015), available at http://www.sec.gov/divisions/marketreg/mrfaqregsho1204.htm.  As to spoofing, Plaintiffs similarly admit that "[o]rder cancellation itself is not illegal," and that "[m]arket makers," like Virtu, "cancel orders for various legitimate reasons."  ¶ 410.  Plaintiffs plead no fact showing that the unparticularized spoofing was not, in fact, legitimate.

"allegations fail to state even roughly how many shares the defendants sold, when they sold them, and why those sales caused the precipitous drop in stock prices."); *Cohen*, 722 F. Supp. 2d at 426 ("Neither the Complaint nor Plaintiffs' opposition identifies any dates on which any [defendant] was involved in naked short sales."); *id.* at 424 ("[A]llegations of failures to deliver, without more, are insufficient to state a claim for market manipulation")[11]

The LULD allegations (*see* pages 6-7, above) also fail the test. Even if the Court were to overlook Plaintiffs' admission that their allegations are speculative (*see* ¶¶ 284, 298, 302, 358-359, 389, 446, 499), the complaint alleges no specific conduct by Virtu, let alone when such conduct supposedly occurred. Paragraph 344 is illustrative.[12] It does not identify what influence Virtu supposedly exerted over the LULD Committee, how or when Virtu exerted that unidentified influence, or why the influence is unlawful. As for trading halts in AMC securities, the complaint alleges no fact showing that any were improper or outside the bounds of the LULD rule. It also alleges no fact connecting Virtu to alleged, yet unidentified, *quid pro quo* payments to halt trading, let alone identify any particular payment by anyone for any particular halt. The lack of detail is fatal. *See Cohen,* 722 F.2d at 422 (dismissing claims based on alleged bribery of a journalist because the complaint "is silent concerning the amount of the alleged bribe, when it was supposedly made, or who was present at the time.").

The short-and-distort allegations (*see* pages 7-8, above) fail the test too. The complaint alleges that Virtu "conspired" and "have conduct [sic] a monetary exchange" with Fox

---

[11] Plaintiffs claim that Virtu violated Regulation SHO (*see* 17 C.F.R. § 242.200 *et seq.*) "by failing to locate and deliver shares in connection with short sales of AMC stock, resulting in 'Failure to Deliver' positions." ¶ 500 (Count 6). Assuming a private right of action exists for Regulation SHO violations, Plaintiffs' claims fail as a matter of law because they do not sufficiently plead that Virtu sold short AMC stock or caused FTDs. The complaint also acknowledges (*see* ¶ 316), but does not grapple with, the market maker's exemption from the "locate" requirement. *See* 17 C.F.R. § 242.203(b)(2)(iii). So even if Virtu sold short AMC securities, Plaintiffs plead no fact showing that those trades were not exempted bona fide market making activities. Plaintiffs plead no Regulation SHO claim.

[12] "The influence exerted by Citadel, Virtu, and Goldman Sachs and Citigroup over the LULD Committee to benefit their short positions could represent a conflict with the Committee's purpose of investor protection."

Business News to run stories designed to depress the price of AMC securities.  ¶ 439.  But it pleads no fact supporting any supposed conspiracy, such as when or how it was formed and how it was carried out, or who paid how much to whom, when, and for which Fox Business News stories.  Courts routinely reject similarly unspecific conspiracy allegations.  *See Cohen*, 722 F.2d at 422.  Exhibit Z does not salvage Plaintiffs' short-and-distort allegations.  The sole Virtu connection among the exhibit's 25 pages of tweet screen-shots and graphics is a tweet exchange between a Fox Business News anchor and Virtu's CEO, the substance of which is that they enjoyed seeing one another – among other unidentified people – over drinks and pizza at a Brooklyn restaurant one night in June 2023.  *See* Ex. Z at 24-25.  That hardly shows a "close personal association"

(¶ 443), let alone pleads facts showing that Virtu paid anyone for any coverage of any security at any time or divulged material non-public information that, when disclosed, impacted AMC securities or Plaintiffs' alleged AMC investments.

In sum, Plaintiffs have not "particularly allege[d] what [Virtu] did – beyond simply mentioning common types of manipulative activity;" and they have not "state[d] how this activity affected the market in [AMC] stock."  *ATSI*, 493 F.3d at 104.

### D.    Plaintiffs Fail to Sufficiently Plead that Virtu Acted with Scienter

To plead a Section 9(a)(2) or Section 10(b) claim, a plaintiff must allege that a defendant acted with scienter, meaning "intentional or willful conduct designed to deceive or defraud investors" or "a high degree of recklessness."  *Metzler Asset Mgmt GMbH v. Kingsley*, 928 F.3d 151, 158 (1st Cir. 2019).  Scienter allegations must satisfy the PSLRA's "[e]xacting" standards.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  That means a plaintiff must "state **with particularity** facts giving rise to a **strong** inference that the defendant acted with" scienter.  *Metzler*, 928 F.3d at 158 (emphasis in original) (quoting 15

U.S.C. § 78u-4(b)(2)).  A strong inference is one that is "more than merely plausible or reasonable – it must be **cogent and at least as compelling as any opposing inference** of nonfraudulent intent." *Tellabs*, 551 U.S. at 314; *accord id.* at 324.  A complaint that fails to plead facts raising a "strong inference" of scienter "**shall**" be dismissed.  15 U.S.C. § 78u-4(b)(3)(A).  Here, the complaint fails to allege facts raising any – let alone the required "strong" – inference that Virtu intended to deceive anyone about AMC and AMC securities.

      Plaintiffs' core contention is that Defendants, including Virtu, were short AMC common stock and engaged in manipulative acts to avoid a short squeeze.  (*See* pages 3-4, above.)  But the complaint fails to allege any fact showing that Virtu was ever short AMC securities at any time, thus gutting Plaintiffs' insinuation that Virtu was motivated to manipulate to avoid losing money.  Plaintiffs offer nothing beyond the short squeeze allegations but threadbare, conclusory assertions of alleged wrongful intent.[13]  Those assertions fail to satisfy Rule 8, let alone the PSLRA's exacting standards.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("[B]are assertions … amount[ing] to nothing more than a formulaic recitation of the elements are insufficient to withstand dismissal.").

      Even if Virtu had engaged in naked short selling, cancelled orders, or traded on dark pools, the complaint still fatally fails to allege facts showing that Virtu did so to manipulate AMC securities prices to harm AMC investors.  Indeed, Plaintiffs concede that the alleged acts can be benign and lawful, particularly when conducted by market makers like

---

[13] *See, e.g.*, ¶¶ 303 ("The persistent pattern of [Virtu's and others'] trading activities, characterized by the systematic failure to deliver, sends a clear signal of intent to manipulate the market."); 374 ("Virtu … intentionally manipulated the price of AMC stock through dark pools.  This indicates a clear intention to deceive or manipulate, which violates federal law."); 473 ("all these manipulative acts were done with scienter … aiming to deceive or defraud investors through their actions that artificially influenced the [AMC securities'] prices"); 489 ("[T]he defendants acted with scienter, meaning they had the intent to deceive, manipulate, or defraud investors by engaging in practices that resulted in the artificial deflation of the stock prices of AMC and APE."); 505 ("[The Defendants] knowingly and intentionally engaged in deceptive and manipulative practices that directly influenced the … the [AMC securities] prices."); 507 ("Defendants acted knowingly or with reckless disregard for the truth.").

Virtu.  *See* ¶¶ 285, 289, 410.  Thus, the complaint fails not only to raise any – let alone the requisite "strong" – inference that Virtu had scienter, it also fails to raise an inference that is cogent and at least as compelling as any opposing inference of nonfraudulent intent.[14]

## II.     The 1933 Act Claims Fail as a Matter of Law

The complaint perhaps suggests that Virtu violated Section 5(c) by selling unregistered securities.  *See* ¶ 510.  But no private right of action exists under Section 5(c).  The remedy for a buyer of unregistered securities is an action under Section 12(a)(1), 15 U.S.C. § 77l(a)(1) (*see Risley v. Universal Navigation, Inc.*, --- F. Supp. 3d ---, 2023 WL 5609200, at *15 (S.D.N.Y. Aug. 29, 2023)), a section the complaint does not reference.  In any event, claims against Virtu for the sale of unregistered securities fail as a matter of law.

The essence of a Section 12(a)(1) claim is the purchase of an unregistered security.  Section 12(a)(1) provides that "[a]ny person who ... offers or sells a security in violation of [Section 5] ... shall be liable ... to the person purchasing such security from him."  Consequently, "a prospective buyer has no recourse against a person who touts unregistered securities to him if he does not purchase the securities."  *Pinter v. Dahl*, 486 U.S. 622, 644 (1988).  Even when one buys unregistered securities, the Section 12(a)(1) claim is viable only against the statutory seller – that is, the person who transferred title to the buyer or successfully solicited the buyer's purchase of the securities.  *See Risley*, 2023 WL 5609200, at *15.  A complaint that does not plead the purchase and statutory seller elements fails as a matter of law to state a Section 12(a)(1) claim.  *See Risley*, 2023 WL 560920, at *15 (dismissing claims because the complaint failed to allege a successful solicitation); *Forsberg v. Always Consulting, Inc.*, No. 06-cv-13488, 2008 WL 5449003, at *12 (S.D.N.Y. Dec. 31, 2008) (dismissing claims;

---

[14] To the extent Plaintiffs allege that Virtu aided and abetted supposed 1934 Act violations (*see* ¶ 493), no private right of action exists.  *See Cent. Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 175-177 (1994).

adopting the magistrate judge's finding that the plaintiff failed to allege that the defendants improperly offered or sold a security to him).  Here, the complaint pleads neither element.

Plaintiffs never allege that they bought unregistered securities from Virtu or anyone else.  They simply allege that unregistered Brazilian Depository Receipts and "APEs" were offered.  *See* ¶¶ 506, 508.  Plaintiffs cannot cure this pleading defect because Virtu is a market maker that neither sells nor solicits sales to retail investors like Plaintiffs.  Therefore, the Court should dismiss the Section 1933 Act claims against Virtu.[15]

## III.    The Fiduciary Duty Claims Fail as a Matter of Law

Plaintiffs allege that Virtu (or "Defendants") breached fiduciary duties. *See* ¶¶ 342-343, 347, 351, 484, 488-489, 505.  To plead a fiduciary duty claim, a plaintiff must allege "(1) existence of a fiduciary duty; (2) breach of that duty; (3) damages; and (4) a causal relationship between the breach and the damages."  *Taylor v. Moscow*, No. 13-cv-12675, 2014 WL 2573990, at *5 (D. Mass. June 6, 2014) (Saylor, J.) (dismissing fiduciary duty claims). Here, the claims founder on at least the first element.

A fiduciary duty arises from a relationship of trust and confidence, when one party reposes trust and confidence in another party who knowingly accepts it.  *See Colella v. Children's Hosp. Corp.*, No. 14-cv-11687, 2014 WL 12581775, at *5 (D. Mass. Nov. 4, 2014) (dismissing claims).[16]  Fiduciary duty claims fail as a matter of law when a plaintiff does not

---

[15] Plaintiffs allege that "Defendants," not Virtu specifically, violated Section 17(a).  *See* ¶¶ 269, 405. No private right of action exists for violating that section.  *See Moldonado v. Dominguez*, 137 F.3d 1, 7-8 (1st Cir. 1998).

[16] A court need not conduct a choice of law analysis when the laws of the states the could supply the controlling law yield the same result.  *See Fratus v. Repub. W. Ins. Co.*, 147 F.3d 25, 28 (1st Cir. 1998).  That is the case here.  The substantive fiduciary duty law of Massachusetts and Michigan (Plaintiffs' home states (*see* ¶¶ 27-28)) and Delaware and New York (where Virtu is incorporated and has its principal place of business (*see* ¶ 38)) is the same.  *See UBS Fin. Servs., Inc. v. Aliberti*, 133 N.E.3d 277, 288 n.12 (Mass. 2019) (holding that the Court "discern[s] no relevant difference between the fiduciary duty law of New York and Massachusetts"); *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1108 (6th Cir. 2012) (holding under Michigan law that "a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of

plead facts showing that it reposed trust and confidence that the defendant accepted.  *See id*.

Here, Plaintiffs do not plead those facts.  Nor could they, given that market makers like Virtu do

not serve retail investors.

Plaintiffs also allege that Virtu violated Section 206 of the Investment Advisers

Act of 1940 and Regulation Best Interest.  *See* ¶¶ 343, 353.  But neither provision supports a

private right of action.  *See Transam. Mortg. Advisers, Inc. v. Lewis*, 444 U.S. 11, 19-24 (1979)

(Section 206); *Brooks v. Black*, No. 85-cv-4505, 1986 WL 2705, at *2 (D. Mass. Jan. 14, 1986)

(same); Reg. Best Interest, Exch. Act Rel. No. 34-86031, 84 Fed. Reg. 33318, at 33327 (June 5,

2019) (stating "we do not believe Regulation Best Interest creates any new private right of action

or right of rescission, nor do we intend such a result.").  In any event, Plaintiffs acknowledge that

Section 206 and Regulation BI concern a client's relationship with its investment advisor or

broker-dealer.  *See* ¶¶ 343 nn.185, 186; 351.  But Plaintiffs do not – and cannot – allege that they

were Virtu's clients.[17]

## IV.    The Remaining Claims against Virtu Fail as a Matter of Law

Plaintiffs' claims for alleged antitrust, RICO, Title 18, and FINRA rule violations

fail as a matter of law for the reasons set forth in Points II.A, B, D and F of the Citadel Brief.[18]

---

another."); *Metro Ambulance, Inc. v. E. Med. Billing, Inc.*, Civ. A. No. 13929, 1995 WL 409015, at *2 (Del. Ch. July 5, 1995) (same, under Delaware law).

[17] Plaintiffs' claims are not saved by their assertion that Virtu is a Self-Regulatory Organization that "owe[s] the Plaintiffs fiduciary duty [*sic*] of maintaining a fair and orderly marketplace for all participants."  ¶ 484. Even if Virtu were an SRO, SROs are immune from common law liability.  *See* Citadel Brief, Point II.C.  In any event, Virtu is not an SRO.  An SRO is "any national securities exchange, registered securities association, or registered clearing agency, or … the Municipal Securities Rulemaking Board."  15 U.S.C. § 78c(26).  Virtu is not, and is not alleged to be, any of those.  Because Virtu is not an SRO, it has no duty "to monitor and report under" 15 U.S.C. §§ 78s(b)-(c), 78f(b), contrary to Plaintiffs' claim.  *See* ¶ 484.

[18] The complaint also fails to satisfy basic pleading requirements, as set forth in Point I of the Citadel Brief.

## <u>Conclusion</u>

For the foregoing reasons, the Court should dismiss the complaint against Virtu entirely and with prejudice.  The Court also should award Virtu such other and further relief as just and proper.

Dated: January 9, 2024              Respectfully submitted,

                                  DAVIS WRIGHT TREMAINE LLP

By:    /s/ *Stephen J. Crimmins*
          Stephen J. Crimmins (BBO No. 544930)

          1301 K Street, N.W., Suite 500 East
          Washington, D.C. 20005
          Tel. (202) 974-4200
          stephencrimmins@dwt.com

          Michael V. Rella (*pro hac vice*)
          James K. Goldfarb (*pro hac vice*)
          Barry S. Gold (*pro hac vice*)
          1251 Avenue of the Americas, 21st Floor
          New York, New York 10020
          Tel: (212) 489-4230
          michaelrella@dwt.com
          jamesgoldfarb@dwt.com
          barrygold@dwt.com

          Cameron S. Matheson (BBO No. 636628)
          4870 Sadler Road, Suite 301
          Glen Allen, Virginia  23060
          Tel: (804) 762-5332
          cameronmatheson@dwt.com

          *Attorneys for Specially Appearing Defendant Virtu Financial, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on January 9, 2024, this memorandum of law was filed with the Court through the CM/ECF system, which will send notification of this filing to all registered participants as identified on the Notice of Electronic Filing.  A copy of the memorandum of law as filed will be served January 9, 2024 via electronic mail on the *pro se* plaintiffs at the addresses indicated below:

       A.P. Mathew, *pro se*
       Waltham, MA
       Alexpmathew0311@gmail.com

       Jordan Affholter, *pro se*
       Ann Arbor, MI
       jordanaffholter@gmail.com

       */s/ Stephen J. Crimmins*
       Stephen J. Crimmins

4861-1814-8250

4861-1814-8250v.7 0120140-000030