**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **ALEX P. MATHEW and JORDAN AFFHOLTER,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CITIGROUP GLOBAL MARKETS INC., et al.,**<br><br>**Defendants.** | ) | **Civil Action No. 23-12302-FDS** |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS, MOTIONS TO STRIKE, AND PLAINTIFFS' MOTIONS TO AMEND AND EXTEND TIME**

**SAYLOR, C.J.**

This is, ostensibly at least, a civil matter alleging securities fraud. Plaintiffs Alex Mathew and Jordan Affholter, who are proceeding *pro se*, allege that they sustained financial damages as a result of a conspiracy to manipulate the price of shares of AMC Entertainment Holdings, Inc. ("AMC").[1]

The complaint is a sprawling and largely impenetrable mass of allegations and claims. In its current, amended, form, it is 213 pages long, plus 36 exhibits, together totaling 430 pages. It names 16 defendants, including stock exchanges, regulators, trading firms, a bank, and a media company, as well as "unknown defendants." It purports to assert 11 counts against all

[1] Plaintiffs, for reasons that are unclear, filed the complaint under abbreviated versions of their names ("A.P. Mathew" and "J. Affholter"). It nonetheless appears, based on the pleadings, that their first names are "Alex" and "Jordan." There is a strong presumption against pseudonyms in civil litigation, such that their use is only warranted in exceptional cases. *See Does 1-3 v. Mills*, 39 F.4th 20, 25 (1st Cir. 2022); *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61, 71 (1st Cir. 2022). That principle surely should apply to incomplete names, as well. Furthermore, both plaintiffs have failed to provide their mailing addresses to the clerk and on all pleadings, as required by the local rules. *See* D. Mass. L.R. 83.5.5(e), (g).

defendants; however, because each of those counts alleges violations of multiple statutes and regulations, the actual number of asserted claims cannot be ascertained.[2]

As noted, the complaint appears to allege a conspiracy by multiple entities to manipulate the price of AMC shares. Specifically, it claims, or purports to claim, violations of Sections 9(a)(2), 10(b), and 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i(a)(2), 78j(b), 78m(d); SEC Rule 10b-5, 17 C.F.R. 240.10b-5; Sections 5(c) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77e(c), 77q; SEC Regulation SHO, 17 C.F.R. § 242.200 *et seq.*; the Investment Advisors Act of 1940, 15 U.S.C. § 80b-1 *et seq.*; the Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 1851; the Commodity Exchange Act of 1936, 7 U.S.C. § 1 *et seq.*; Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2; Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15; the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(4), (5); the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961 *et seq.*; the federal mail-fraud and wire-fraud statutes, 18 U.S.C. § 1341-4(a); Rules 5270, 5210, and 5310 of the Financial Industry Regulatory Authority ("FINRA"); and federal regulations governing the holding of securities by national banks, 12 C.F.R. § 1.7. It seeks monetary damages, injunctive relief, punitive damages, attorneys' fees, and other relief.

Notwithstanding the massive size of the complaint, it does not appear to allege certain critical facts. Among other things, it does not allege when plaintiffs purchased their shares (only that they have been "verified shareholders" since February 2021) or whether they ever sold any of those shares (the prayer for relief seeks damages for their "loss in investment value," suggesting that they have not). And although it claims fraud on a huge scale, it does not appear

---

[2] For the sake of convenience, the amended complaint will be referred to as "the complaint" unless the context indicates otherwise.

to allege that plaintiffs relied upon any specific misrepresentations or omissions in connection with their purchase or sale of their securities.

Twelve defendants—the New York Stock Exchange ("NYSE"); Nasdaq Stock Market LLC; Citadel Securities LLC; Antara Capital LP; Citigroup Global Markets Inc.; AMC; Susquehanna International Group, LLP; The Depository Trust & Clearing Corporation ("DTCC"); FINRA; Goldman Sachs Group, Inc.; Mudrick Capital Management, L.P.; and Virtu Financial, Inc.—have moved to dismiss the complaint for failure to comply with the pleading requirements of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief can be granted.[3]

Without question, the complaint is subject to dismissal on multiple grounds. Among other things, it suffers from the following relatively obvious flaws:

It fails to comply with Rule 8, which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

It fails to comply with Rule 9, which requires that a complaint plead fraud with "particularity." Fed. R. Civ. P. 9(b).

It fails to comply with the Private Securities Litigation Reform Act ("PSLRA"), which requires that a complaint alleging securities fraud "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

It improperly asserts civil claims under federal criminal statutes, such as the mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341, 1343.

[3] Proof of service has not been filed as to one of the remaining defendants (Alameda Capital, which the complaint also refers to as Alameda Research). Three other defendants (Hycroft Mining Holding Corporation, Fox Business, and FTX) have apparently been served, but have not responded to the complaint.

It improperly asserts civil RICO claims based on predicate acts of securities fraud, in violation of 18 U.S.C. § 1964(c).

It improperly asserts civil claims under statutes, such as Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q, and rules and regulations, such as FINRA rules and Regulation SHO, that do not provide a private right of action.

After the filing of the motions to dismiss, plaintiffs moved for leave to file a second amended complaint.[4] At that point, plaintiffs had been served with twelve separate motions to dismiss and supporting memoranda, each of which set forth various ways in which the amended complaint was procedurally and substantively deficient. Plaintiffs might have taken the opportunity to attempt to streamline and clarify the complaint and otherwise conform to the requirements of Rules 8 and 9 and other federal laws.

Instead, plaintiffs went in a different direction. The proposed second amended complaint is more than seven times longer than its predecessor: it sprawls over 1,598 pages of text, plus 1,992 pages of exhibits, for a total of 3,590 pages. Furthermore, it adds 23 more defendants, for a total of 39.[5] The new proposed defendants include various individuals, law firms, investment banks, commercial banks, and a pension fund, among other organizations.[6]

Plaintiffs had indicated in their motion for leave to amend that they had "discovered new

[4] As noted below, plaintiffs moved for leave to file a second amended complaint on January 11, 2024, but did not file a proposed second amended complaint until May 31, 2024. (*See* ECF Nos. 185, 211).

[5] The caption lists 41 defendants, but it appears to list the NYSE and Grant [&] Eisenhofer twice. The 23 new defendants are D.F. King [sic], B. Riley [sic], Weil Gotshal and Manges [sic], Grant Eisenhofer [sic], Miriam Tauber Law Offices [sic], Mark Rubenstein, Dennis Donoghue, Moelis and Co., ABN AMRO, ESMA, Euroclear, B3 Banco [sic], CM-Equity, Interactive Brokers [sic], Apollo Global Management, Morgan Stanley, Barclays, HSBC, J.P. Morgan, Allegheny County Pension Fund, Bernstein Litowitz Berger & Grossmann LLP, CIM Investment Management, and Bank of America/Merrill Lynch. (ECF No. 211).

[6] In addition, and without explanation, the proposed second amended complaint drops Jordan Affholter as a plaintiff. (*See* ECF No. 211 at 1598).

evidence" that "implicates" 17 new defendants. (ECF No. 185 at 2). However, only one of those defendants (B. Riley Financial) was named in the proposed second amended complaint.[7] There is thus a realistic prospect that plaintiffs may seek to add another 16 defendants at some point in the future.

The Court will deny plaintiffs' motion for leave to amend on the basis of futility, as it plainly violates Rule 8 and appears to violate Rule 9 and the PSLRA. The only question at this stage is whether the Court should permit plaintiffs an opportunity to file yet another amended complaint, or simply to dismiss the complaint outright.

Normally, when *pro se* plaintiffs file a complaint that is deficient in some respects, the practice of the courts in this jurisdiction is to point out the deficiencies and provide them an opportunity to amend. For the reasons set forth below, in light of the unusual circumstances of this case, this Court sees no good reason to do so here. Accordingly, and for the following reasons, the motions to dismiss will be granted.

## I. Background

On October 6, 2023, plaintiffs filed the original complaint in this action. On November 16, 2023, they filed an amended complaint, which is the current operative complaint.

Twelve defendants (New York Stock Exchange; Nasdaq; Citadel; Antara; Citigroup; AMC; Susquehanna; Goldman Sachs; Mudrick; and Virtu Financial) have separately moved to

[7] The motion alleged that "[s]ince the filing of the Amended Complaint, Plaintiffs have discovered new and material facts that warrant the inclusion of the aforementioned nominal defendants as full defendants in this action." (ECF No. 185 at 2). It continued:

> Additionally, after the filing of the Amended Complaint, Plaintiffs discovered new evidence that implicates Equilend, IEX, Adam M. Aron, David Aron, Jeremy Aron, Ernest & Young, B. Riley Financial, Brett Harrison, the AMC Entertainment Holdings Board of Directors [Sean David Goodman, Howard "Hawk" Koch, Jr, Gary Locke, Lee Wittlinger, Philip Lader, Adam Sussman, Anthony Saich,] Mary-Catherine Lader, and Uniswap in the matters at issue in this lawsuit.

(ECF No. 185 at 2).

dismiss the complaint for failing to comply with the pleading requirements of Fed. R. Civ. P. 8, among other reasons. (*See* ECF Nos. 39 at 17, 154 at 16, 156 at 3, 159 at 1, 161 at 11, 162 at 7, 167 at 18, 176 at 3, 177 at 1, 179 at 16).[8]

On January 11, 2024, plaintiffs filed a motion for leave to amend the complaint once again. No proposed second amended complaint was filed with that motion.[9]

On January 19, 2024, plaintiffs filed a letter framed as a motion for enlargement of time to oppose defendants' motions. However, that letter also appeared to ask for more time to file an amended complaint and add new evidence. (*See* ECF No. 190 at 10).

On March 17, 2024, plaintiffs filed a motion for "further enlargement of time to amend complaint." (*See* ECF No. 203).

Eventually, on May 31, 2024, plaintiffs filed a second amended complaint. That document was simply filed on the docket, as if leave to amend had been filed. Because plaintiffs had not received leave to amend, the Court will deem that document to be the proposed second amended complaint.[10]

---

[8] Of the moving defendants, only FINRA and DTCC omit that basis, relying instead on the doctrine of absolute regulatory immunity and plaintiffs' failure to allege misconduct by or seek relief from them as each was named a "nominal defendant" in the amended complaint. (*See* ECF Nos. 170 at 1, 172 at 1). The amended complaint does not allege any wrongdoing by either FINRA or DTCC, request any relief from them, nor allege any basis for their inclusion in this suit as nominal parties. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *BFT Advisors, LLC v. Long*, 2022 WL 1912871, at *4 (D. Mass. June 3, 2022). That is sufficient for those motions to be granted.

[9] At the same time, plaintiffs filed a memorandum of law in opposition to self-regulatory organizations' motions to dismiss and (without seeking leave of court) an *amicus curiae* brief. On January 19 and 25, 2024, the NYSE and Nasdaq, respectively, moved to strike those three filings.

[10] There is nothing in the record to indicate that plaintiffs served the 23 new defendants 14 days in advance of filing the motion to amend, as required by Local Rule 15.1(b). That rule requires as follows:

> A party moving to amend a pleading to add a new party shall serve, in the manner contemplated by Fed. R. Civ. P. 5(b), the motion to amend upon the proposed new party at least 14 days in advance of filing the motion, together with a separate document stating the date on which the motion will be filed. A motion to amend a pleading to add a new party shall be accompanied by a certificate stating that it has been served in advance on the new party as required by this rule.

## II. Motions to Dismiss

### A. Rule 8

Pursuant to Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "short and plain statement" must "give the defendant fair notice of the claim and its factual basis," and "possess enough heft to show that the pleader is entitled to relief." *SEC v. Tambone*, 550 F.3d 106, 118 (1st Cir. 2008) (internal quotations, citations and original textual alteration omitted), *overruled on other grounds by* 597 F.3d 436 (1st Cir. 2010).

Dismissal for failing to comply with Rule 8 is an appropriate remedy if the complaint is "excessively long and unnecessarily redundant," *see Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1993), or "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Sayied v. White*, 89 Fed. Appx. 284, at *284 (1st Cir. 2004) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see Lariviere v. Lariviere*, 2012 WL 1853833 (D. Mass. May 18, 2012) (granting motions to dismiss a 56-page long amended complaint "with more than 100 paragraphs of rambling, difficult-to-follow text"); *Jackson v. Polaroid*, 181 F.3d 79 (1st Cir. 1999) (finding no abuse of discretion where district court dismissed a complaint with over 350 paragraphs and 80 plus counts); *Youngworth v. Gentile*, 2006 WL 516757 (D. Mass. Feb. 27, 2006) (dismissing complaint containing "hundreds of assertions" presented in "a rambling, discursive essay form"); *Belanger v. BNY Mellon Asset Mgmt., LLC*, 307 F.R.D. 55 (D. Mass. 2015).

Because plaintiffs are proceeding *pro se*, the complaint, "however inartfully pleaded,

---

L.R. 15.1(b). "Compliance with local rules of procedure is mandatory, even for *pro se* parties." *Piccone v. Carrington Mortg. Servs., LLC*, 2023 WL 3293054, at *3 (D. Mass. May 5, 2023) (quoting *Monahan v. Sabatis*, 2014 WL 12703711, at *2 (D. Mass. Dec. 16, 2014)).

must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); Fed. R. Civ. P. 8(e) ("[p]leadings must be construed so as to do justice."); *see also Instituto De Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). However, where the court cannot ascertain the nature and basis of any legitimate claims, it is under no obligation to rewrite the pleadings on plaintiffs' behalf. *See Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 Fed. Appx. 274, 276-277 (11th Cir. 2008) ("While a trial judge is to employ less stringent standards in assessing pro se pleadings than would be used to judge the final product of lawyers, this leniency does not permit the district court to act as counsel for a party or to rewrite deficient pleadings.").

*Pro se* litigants are required to comply with Rule 8, and dismissal on that basis may be appropriate. *See, e.g.*, *Green v. Commonwealth of Mass.*, 108 F.R.D. 217 (D. Mass. 1985); *Koplow v. Watson*, 751 F. Supp. 2d 317, 321 (D. Mass. 2010); *Tierney v. Town of Framingham*, 292 F. Supp. 3d 534, at 544 (D. Mass. 2018); *Riddick v. Bos. Hous. Auth.*, 2022 WL 21740470 (D. Mass. May 26, 2022), *report and recommendation adopted* (July 6, 2022), *subsequently aff'd*, 2023 WL 7806973 (1st Cir. June 20, 2023).

Without question, the complaint here violates Rule 8. It is very far from a "short and plain statement" of the claim; it is extraordinarily lengthy, confused, rambling, and discursive. It also fails to allege which particular claims are asserted against which particular defendants and why. "[A]ny adequate response [is] impractical, if not impossible." *Losano v. Evans*, 345 F.R.D. 8, 11 (D. Mass. 2023). Dismissal for violation of Rule 8 is therefore appropriate.

### B. Rule 9(b) and the Private Securities Litigation Reform Act

Claims sounding in fraud or alleging securities fraud also must meet the heightened

pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *see City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 757 (1st Cir. 2011) (PSLRA's heightened scienter pleading requirements apply to complaints alleging securities fraud). Claims that do not meet these standards must be dismissed. *See* 15 U.S.C. § 78u-4(b)(3)(A).

Here, the complaint does not identify the alleged misrepresentations or omissions on which plaintiffs relied in connection with any purchase or sale of securities—or, indeed, when they acquired their securities or whether they ever sold them, which makes it impossible to ascertain the sequence of any relevant events. The complaint thus clearly violates Rule 9.

In addition, the complaint fails to plead scienter with particularity. Several allegations of the complaint allege scienter in conclusory terms—alleging, for example, that a defendant "acted with scienter" or "had scienter of what they were doing." (Compl. ¶ 103). If there is any greater specificity, it is buried in the morass of the complaint. The complaint therefore fails to comply with the PSLRA.

**C. <u>Rule 12(b)(6)</u>**

To survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). "[E]ven a pro se plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Adams v. Stephenson*, 116 F.3d 464 (1st Cir. 1997) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988)).

At a bare minimum, and among other defects, the complaint here fails to state a claim in the following respects.[11]

**1. <u>Claims Arising under the Mail Fraud and Wire Fraud Statutes</u>**

The complaint appears to allege civil claims under 18 U.S.C. §§ 1341 and 1349, the federal mail and wire fraud statutes. Those are criminal statutes with no private right of action. *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 17 (D. Mass. 2004), *aff'd*, 2005 WL 5493113 (1st Cir. Aug. 23, 2005). Accordingly, to the extent the complaint asserts a claim under those statutes, it may be dismissed as to all defendants.

**2. <u>Claims Arising under RICO</u>**

The complaint appears to allege a civil RICO claim based on securities fraud predicates. The RICO statute makes illegal any "(1) conduct (2) of an enterprise (3) through a pattern (4) of

[11] By identifying certain obvious issues, the Court does not mean to suggest that other claims are not also problematic and would survive a motion to dismiss.

racketeering activity." *See Feinstein v. Resolution Tr. Corp.*, 942 F.2d 34, 41 (1st Cir. 1991) (citing 18 U.S.C. § 1962). "Racketeering activity" is defined in 18 U.S.C. § 1961(1) to include a variety of predicate offenses. However, the statute provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [civil RICO]." 18 U.S.C. § 1964(c); *see MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011) ("[S]ection 107 of the PSLRA bars civil RICO claims alleging predicate acts of securities fraud").[12] Accordingly, to the extent the complaint asserts a claim under RICO, it may be dismissed as to all defendants.

**3. Claims Arising under Section 17(a)**

The complaint appears to allege claims under Section 17(a), Securities Act of 1933, 15 U.S.C. § 77q. No such right of action exists. *See Maldonado v. Dominguez*, 137 F.3d 1, 8 (1st Cir. 1998). Accordingly, to the extent the complaint asserts claims under Section 17(a), it may be dismissed as to all defendants.

**4. Claims Arising under FINRA Rules**

The complaint appears to allege claims for violation of FINRA Rules 5270, 5210, and 5310. The FINRA rules, however, do not provide a private right of action. *See Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015); *cf. Frisone v. Bear Stearns & Co.*, 1983 WL 1313, at *4 (D. Mass. Apr. 27, 1983). Accordingly, to the extent the complaint asserts

---

[12] Furthermore, the civil-suit provision of the RICO statute grants the right to sue to "[a]ny person injured in his business or property by reason of a violation of" the substantive provisions of the statute. 18 U.S.C. § 1964(c). Civil RICO claims "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000). "As a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite." *DeMauro v. DeMauro*, 115 F.3d 94, 98 (1st Cir. 1997). Plaintiffs have not met that standard. Despite more than 200 pages of allegations, plaintiffs fail to state a clear and definite statement of their losses. "[I]n cases alleging civil RICO violations, particular care is required to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).

claims for violation of FINRA rules, it may be dismissed as to all defendants.

#### 5. Claims Arising under Regulation SHO

The complaint appears to allege claims for violation of SEC Regulation SHO, 17 C.F.R. § 242.200 *et seq*. Regulation SHO does not, however, provide a private right of action. *See* 17 C.F.R. § 242.200. Accordingly, to the extent the complaint asserts claims for violation of Regulation SHO, it may be dismissed as to all defendants.

## III. Leave to File Second Amend Complaint

### A. Rule 15(a)

Rule 15(a) "reflects a liberal amendment policy . . . and provides that a court 'should freely give leave when justice so requires.'" *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009). When "justice so requires" does not command a district court to "mindlessly grant every request for leave to amend." *See Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388 (1st Cir. 2013) (citing *Aponte-Torres v. University of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006)). In determining whether to grant a motion to amend, the court must examine the totality of the circumstances and "exercise its informed discretion in constructing a balance of pertinent considerations." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006).

Leave to amend can be denied because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). In reviewing for futility, the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Id.*

**B. <u>Analysis</u>**

The proposed second amended complaint—with 1,598 pages of text and 1,992 pages of exhibits—unquestionably violates Rule 8, and appears to violate both Rule 9 and the PSLRA, 15 U.S.C. § 78u-4(b)(2)(A), for the same reasons as its predecessor. The motion for leave to amend to adopt that version of the complaint will accordingly be denied on the basis of futility. The only question is whether, under the circumstances, plaintiffs should be given yet another opportunity to amend.

As noted, the normal practice in this Circuit is to permit *pro se* plaintiffs an opportunity to file an amended complaint that cures any deficiencies identified by the court. *See Von Smith v. Al Thani*, 2022 WL 2092505 (1st Cir. Feb. 14, 2022); *see also, e.g.*, *D'Amario v. Sturdy*, 2015 WL 8492035, at *5 (D. Mass. Dec. 10, 2015). That practice is presumably intended to ensure that a *pro se* plaintiff without formal legal training has a fair opportunity to assert a potentially valid claim. *See Rodi v. S. New England Sch. Of L.*, 389 F.3d 5, 20 (1st Cir. 2004).

Here, plaintiffs were made aware of the deficiencies of the amended complaint—not by the Court, but by the 12 separate filings of defendants, each of which pointed out multiple defects, including its failure to comply with Rules 8 and 9. *Cf. Cote v. Murphy*, 152 F. App'x 6, 8 (1st Cir. 2005) ("Plaintiffs also object that as pro se litigants they should have been notified of any pleading deficiencies and given a chance to amend their complaint accordingly. Yet defendants' memorandum provided ample notice, asserting that "plaintiffs have failed to allege that they have suffered any injury . . ."). After a fair opportunity to review those motions, plaintiffs elected to seek leave to file a second amended complaint that not only fails to cure those deficiencies, but is more than seven times longer than its predecessor. It is fair to say that plaintiffs were both put on notice of the deficiencies of their approach and chose to ignore them. Nor is it clear—even though they are proceeding *pro se*—that they are indeed unsophisticated

litigants. *See Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 168 (D.C. Cir. 1990) ("[Plaintiff], as a law-trained individual, unlike the unsophisticated *pro se* litigant, can be presumed to have some acquaintance with the rules of the judicial process and the consequences risked by their infringement.").[13]

Moreover, in a document filed on June 4, 2024, and captioned "Plaintiffs' Memorandum of Law Regarding PSLRA Pleading Standards, RICO, Billings, Access to Information in Opposition [to] Defendants' Motions to Dismiss," plaintiffs indicate that the failure of the proposed amended complaint to respond to the deficiencies raised by defendants was not accidental or caused by a lack of awareness. The response contends that the heightened pleading standard of the PSLRA prejudices plaintiffs, discusses the lack of inherent fairness for *pro se* litigants, and proposes reforms for the PSLRA and securities litigation in general. The opposition cites Rule 8(a) to suggest specificity and particularity standards, including Rule 9(b), should not apply. (ECF No. 212, Opp. at 11-12, 45). There is even a section titled "Plaintiffs' Pleadings May Inherently Lack Due to Information Gap and Denial of Rights and Privileges." (ECF No. 212, Opp. at 47).

"A pro se litigant who has demonstrated a capacity for understanding and articulating the issues may reasonably be extended fewer allowances than a pro se litigant who is hopelessly out of his depth." *Sena v. Kenneway*, 997 F.3d 378, 387 (1st Cir. 2021). At its core, plaintiffs' response does not suggest a lack of capacity for understanding and articulating the issues, but rather a willful assertion that the federal rules and laws should not apply to them.

The practice of permitting a *pro se* litigant to amend a defective complaint does not

---

[13] The Court notes that the original complaint (although not the amended complaint) alleges that plaintiff Mathew has an undergraduate degree from Harvard University; that he has a master's degree in finance and business administration from Bentley University; and that he "is currently in Law School." (ECF No. 1, Compl. at ¶ 15).

appear to be required by law. And surely the practice is not entirely without limits; otherwise, it would effectively give all *pro se* litigants multiple bites at the apple, no matter how substantial the burden on the court, how substantial the burden on the defendants, or how frivolous or vexatious the claims.

Furthermore, civil litigation is not normally cost-free. Here, plaintiffs filed suit against 16 defendants, 12 of which (thus far) have been forced to engage counsel, presumably at substantial expense, to review the complaint and prepare and file motions to dismiss.[14] Permitting plaintiffs to amend the complaint will likely force those same defendants to engage in that same exercise yet again unless very substantial changes are made to the existing complaint. And the proposed second amended complaint adds 23 new defendants, for a total of 39: presumably, if some or all of those defendants are served with an amended complaint, they too will have to engage counsel in order to prepare a response.

The Court also notes that this is not plaintiffs' first foray into litigation concerning the alleged market manipulation of AMC shares. On March 31, 2023, plaintiff Mathew (using the pseudonym "John Doe") filed a 262-page complaint against the Securities and Exchange Commission, FINRA, the United States Department of Justice, and President Biden, seeking a writ of mandamus "to compel the SEC, FINRA, and the DOJ to take appropriate and immediate action on behalf of the Petitioner and retail investors who have been subjected to market manipulation, and to prevent further harm to them." Complaint at 5, *Doe v SEC, et al.*, 23-cv-

[14] Furthermore, defendants contend in their opposition and accompanying declaration that plaintiffs have engaged in harassing and dilatory tactics by refusing to respond to certain defendants' offer to consent to amendment or to meet and confer. (ECF Nos. 193 at 9-10, 194). *See* L.R. 7.1(a)(2); *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) ("undue delay in moving to amend, even standing alone, may be such an adequate reason [to deny a leave to amend motion].").

10706-FDS (D. Mass.).[15] That matter was dismissed without prejudice by the Court *sua sponte* on December 28, 2023, on the ground that plaintiff failed to file a return of service, file a motion for an extension of time, or show good cause why service had not been made on any of the named defendants within the 90-day period required by Fed. R. Civ. P. 4(m).[16]

Under the circumstances, it is difficult to imagine that providing plaintiffs an opportunity to amend the complaint yet again will be a fruitful exercise. Furthermore, the potential for unfair prejudice to defendants, and the imposition of a substantial burden on the court, is manifest. While the courts must be solicitous of the rights of *pro se* litigants, they also have the inherent power to control vexatious or oppressive behavior of litigants who appear before it. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-50 (1991).

At some point, enough is enough—and that point has been reached here. Accordingly, the motion for leave to amend will be denied, and plaintiffs will not be given yet another opportunity to file an amended complaint.

## IV. Motions to Strike

Defendants NYSE and Nasdaq have moved under Fed. R. Civ. P. 12(f) to strike plaintiffs' opposition, an *amicus curiae* brief, and plaintiffs' motion to amend the complaint on the grounds that they are immune and that plaintiffs have failed to follow the court's rules and processes. (*See* ECF Nos. 189, 198). Because this matter will be dismissed for failure to state a

---

[15] Although the plaintiff in that matter did not reveal his true name, his residential address matches that of plaintiff Mathew.

[16] In the meantime, plaintiffs had filed this action on October 6, 2023. They also appear to have participated in the AMC shareholder litigation in Delaware, which is cited extensively throughout the complaint. *See In re AMC Ent. Holdings, Inc. S'holder Litig.*, 2023-0215-MTZ (Del. Ch.). (*See* Compl. ¶¶ 27-28; *see, e.g.*, Letter from Morgan T. Zurn, Vice Chancellor, Court of Chancery of the State of Delaware, to Jordan Affholter, et al., RE: *In re AMC Entertainment Holdings, Inc. Stockholder Litigation*, Consol. Civil Action No. 2023-0215-MTZ, (May 24, 2023)).

claim, those motions will be denied as moot.

## V. Conclusion

For the foregoing reasons, the following motions to dismiss are GRANTED: ECF Nos. 38, 153, 155, 157, 158, 160, 165, 169, 171, 174, 175, 178. Plaintiffs' motion to amend (ECF No. 185) is DENIED. Plaintiffs' other motions (ECF Nos. 190, 203) are DENIED as moot. The motions to strike of defendants NYSE and Nasdaq (ECF Nos. 188, 197) are DENIED as moot.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated: June 17, 2024