**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| A. MATHEW, J. AFFHOLTER,<br><br>        Plaintiffs,<br><br>        v.<br><br>CITIGROUP GLOBAL MARKETS, CITADEL SECURITIES LLC, FTX, ALAMEDA CAPITAL, ANTARA CAPITAL, NEW YORK STOCK EXCHANGE, SUSQUEHANNA INTERNATIONAL GROUP, MUDRICK CAPITAL, VIRTU FINANCIAL, FOX BUSINESS, NASDAQ, HYCROFT MINING HOLDING CORPORATION, GOLDMAN SACHS GROUP, AMC ENTERTAINMENT, DTCC, FINRA. NYSE, D.F. KING, B. RILEY, WEIL GOTSHAL AND MANGES, GRANT EISENHOFER, MIRIAM TAUBER LAW OFFICES, MARK RUBENSTEIN, DENNIS DONOGHUE, MOELIS AND CO., ABN AMRO, ESMA, EUROCLEAR, B3 BANCO, CM-EQUITY, INTERACTIVE BROKERS, APOLLO GLOBAL MANAGEMENT, MORGAN STANLEY, BARCLAYS, HSBC, J.P. MORGAN, ALLEGHENY COUNTY PENSION FUND, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, CIM INVESTMENT MANAGEMENT, BANK OF AMERICA/ MERRILL LYNCH, UNKNOWN DEFENDANTS,<br><br>        Defendants. | Case No. 23-cv-12302 |

**MEMORANDUM OF LAW IN SUPPORT OF MUDRICK CAPITAL'S
MOTION FOR REASONABLE ATTORNEYS' FEES**

Pursuant to the Private Securities Litigation Reform Act ("PSLRA") 15 U.S.C. § 78u-4(c)

and the Court's Memorandum and Order granting Defendants' Motions to Dismiss Plaintiffs' First

Amended Complaint, Defendant Mudrick Capital moves to recover $150,049 in reasonable attorneys' fees it has incurred in this action.

## I.    Background

On October 6, 2023, Plaintiffs initiated this sprawling and specious action alleging that a cabal of financial industry participants manipulated the price of shares of stock in the movie theater chain AMC Entertainment Holdings. D.E. 1 at ¶ 1. Plaintiffs' suit followed the "meme stocks" fad of 2020-2021. Plaintiffs originally targeted eight defendants—financial institutions and investment funds—they claim interfered with the AMC stock price to the detriment of the retail investors who had joined the frenzy.[1] The original complaint ran to 213 pages comprised of over 400 paragraphs, included twenty-five exhibits and alleged claims indiscriminately against all defendants. Plaintiffs mentioned defendant Mudrick Capital in only sixteen paragraphs, where they alleged insider trading and securities fraud with respect to a third company—Hycroft Mining—largely disconnected from the core AMC-focused allegations.

On November 16, 2023, Plaintiffs filed their First Amended Complaint ("FAC") without conferring with Defendants or seeking leave of Court. In the FAC, Plaintiffs added four new named defendants, over 100 new paragraphs, and approximately 150 more pages of exhibits. D.E. 20. Plaintiffs, however, added little new information regarding the allegations against Mudrick Capital, which was named in only twenty-one of the FAC's 509 paragraphs. The FAC associated Mudrick Capital with two "counts" titled "RICO" and "Spoofing," even though Plaintiffs did not actually allege that Mudrick Capital engaged in spoofing. D.E. 20 at pp. 190, 197.

---

[1] Plaintiffs also named an additional four "nominal defendants."

On December 6, 2023, Plaintiffs filed an "Emergency Motion for the Preservation of Evidence." D.E. 57. The named Defendants collectively opposed on December 15, 2023. D.E. 88. The Court denied the motion on December 22, 2023. D.E. 110.

Before moving to dismiss the FAC, certain defendants, including Mudrick Capital, attempted to meet and confer with Plaintiffs about further amending their complaint by consent and agreeing to a briefing schedule, "in the interest of efficiency and judicial economy" and to avoid creating "unnecessary motion practice." D.E. 194-1 at 2. Plaintiffs did not respond. *Id.*

Mudrick Capital moved to dismiss the FAC on January 9, 2024. D.E. 175. Mudrick Capital argued that Plaintiffs failed to state a claim under the Racketeer Influenced and Corrupt Organizations ("RICO") statute because, as a matter of law, securities fraud cannot be a predicate act required for RICO liability, and because Plaintiffs failed to adequately plead facts to establish the other elements of the claim. D.E. 176 at 7-11. Mudrick Capital also argued that Plaintiffs failed to state a claim for securities fraud because they failed to plead elements of the cause of action under the PSLRA's elevated pleading standards. *Id.* at 11-14. Finally, Mudrick Capital argued that Plaintiffs failed to state a claim for insider trading because they lacked standing, failed to plead essential elements of the claim, and failed to plead a predicate act of securities fraud. *Id.* at 15-18. Mudrick Capital also notified Plaintiffs—both at the pre-motion meet and confer, and in the Motion to Dismiss itself—that it would move for sanctions should Plaintiffs decline to withdraw their FAC as to Mudrick Capital. *Id.* at 18-20; Declaration of Kenneth S. Leonetti ("Leonetti Decl.") ¶ 3.

On January 11, 2024, two days after Defendants filed their motions to dismiss, Plaintiffs moved for leave to Amend the FAC, D.E. 185. They did not mention that Defendants had offered to consent to amendment in place of filing their motions to dismiss the FAC.

3

On January 19, 2024, Plaintiffs filed a purported "Motion for an enlargement of time to oppose Defendants' Motion to Dismiss," filled with lurid and conspiratorial accusations, including some directed to Mudrick Capital. D.E. 190 at 1-6. On March 17, 2024, Plaintiffs moved for an extension of time to amend the FAC, despite not having been granted leave to amend. D.E. 203. On April 1, 2024, Mudrick and other defendants opposed. D.E. 210. On May 31, 2024, Plaintiffs filed the Second Amended Complaint ("SAC") without leave of court. The SAC added an additional twenty-three defendants, and included 1,598 pages, plus nearly 2,000 pages of exhibits. D.E. 211. The SAC did not remedy the deficiencies identified in Mudrick Capital's Motion to Dismiss. It added new conspiratorial allegations involving Hycroft Mining but did not clarify the claims against Mudrick Capital or address pleading infirmities.

On June 4, 2024, Plaintiffs also filed a purported opposition to Defendants' motions to dismiss styled as an "Memorandum of Law Regarding PSLRA Pleading Standards, RICO, Billings, Access to Information." D.E. 212 ("PSLRA Memorandum"). This filing did not address any of the FAC's defects, instead seeming to lodge a philosophical argument against Congress' design and purposes in passing the PSLRA. Defendants including Mudrick Capital moved to Strike the SAC on June 14, 2024. D.E. 216.

On June 17, 2024, this Court granted Mudrick Capital's motion to dismiss the FAC, stating that "[w]ithout question, the complaint here violates Rule 8… it is extraordinarily lengthy, confused, rambling, and discursive." *Id.* at 8. The Court further held that the FAC failed to plead with required particularity pursuant to Rule 9(b) and the PSLRA, and that it failed to state any claims under mail and wire fraud statutes, RICO, or any other statute. *Id.* at 10-12. The Court also denied leave to amend. *Id.* at 16.

4

## II.   The PSLRA Requires The Court To Assess Whether Plaintiffs Complied with Rule 11 and To Award Sanctions for Abusive or Frivolous Litigation

The PSLRA requires the Court to review the Parties' compliance with the requirements of Fed. R. Civ. P. 11(b). The PSLRA provides that "[i]n any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)." 15 U.S.C.S. § 78u-4(c)(1); *accord Citibank Global Mkts., Inc. v. Santana*, 573 F.3d 17, 31-32 (1st Cir. 2009) ("The statute requiring such findings does not appear to brook any exceptions."). A case reaches "final adjudication" when the court dismisses the complaint without leave to amend. *See In re Genzyme Corp. S'holder Litig.*, 2011 U.S. Dist. LEXIS 113351, at *21 (D. Mass. Sept. 13, 2011) ("[C]ourts have construed the 'final adjudication' language of Section 78u-4(c) to mean when a court has issued 'a terminating decision, such as… dismissal with prejudice without leave to amend.'").

If the Court finds that a party violated Rule 11(b), then sanctions are mandatory. The PSLRA, beneath the header, "Mandatory Sanctions," states that if a party violated "any requirement" of Rule 11(b), as to "any complaint, responsive pleading, or dispositive motion," then "the court **shall** impose sanctions on such party or attorney in accordance with Rule 11." 15 U.S.C.S. § 78u-4(c)(2) (emphasis added); *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 276 (4th Cir. 2006) ("Because the sanctions instruction comes in terms of the mandatory 'shall,' which normally creates an obligation impervious to judicial discretion, the district court must impose sanctions for each violation found."). *See also Scott v. Vantage Corp.*, 64 F.4th 462, 466-67 (3d Cir. 2023) ("Because the text of the PSLRA makes the imposition of sanctions mandatory after a court determines that a party violated Rule 11, we conclude the District Court abused its discretion in declining to impose any form of sanctions.").

The PSLRA also requires the Court to "adopt a presumption" that reasonable attorneys' fees and expenses are "the appropriate sanction." 15 U.S.C. § 78u-4(c)(3). When there is a "substantial failure of any complaint to comply with any requirement of Rule 11(b)," then there is a presumption that a court award "reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C.S. § 78u-4(c)(3). In other words, when the complaint, rather than a responsive pleading or dispositive motion, substantially fails to comply with Rule 11, then the PSLRA not only requires the Court to sanction the plaintiffs, it requires the Court to presume that it should sanction the plaintiffs by requiring them to reimburse the defendants for the reasonable fees and expenses they incurred in the entire action. Plaintiffs can rebut that presumption only "upon proof" that (i) awarding fees "will impose an unreasonable burden on" Plaintiffs and "would be unjust" and that "the failure to make such an award would not impose a greater burden on" Mudrick Capital; or (ii) "the violation of Rule 11(b) … was de minimis." *Id.*

This case has reached "final adjudication" because the Court dismissed the FAC without leave to amend. *See* D.E. 220 at 17. The Court must now make specific findings as to each party's compliance with Rule 11(b), or lack thereof. As explained further below, the Court should find that Plaintiffs' substantially violated Rule 11(b) with respect to the FAC. Upon such a finding, in accordance with the PSLRA, sanctions should be imposed on Plaintiffs. Those sanctions should be in the form of the reasonable attorneys' fees that Mudrick Capital has incurred.

### III. Plaintiffs Substantially Failed to Comply with Rule 11(b) as to the First Amended Complaint

The Court should find that Plaintiffs substantially failed to comply with multiple requirements of Rule 11(b) when they filed the FAC. Rule 11(b) provides:

> **Representations to the Court**. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

6

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b); *Leavitt v. United Servs. Auto. Ass'n*, 2024 U.S. Dist. LEXIS 9859, at *31 (D. Mass. Jan. 19, 2024) (granting motion for sanctions pursuant to Rule 11(b)).

Courts assess compliance with Rule 11(b) by an objective standard. The Rule was revised in 1993 to clarify that there is no requirement of bad faith for a violation to take place. Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendments ("This establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments."); *accord Young v. City of Providence*, 404 F.3d 33, 40 (1st Cir. 2005) ("A specific purpose of the 1993 revision of Rule 11 was to reject such a bad faith requirement."). When applying this objective standard, "[f]actors to be considered include 'the complexity of the subject matter, the party's familiarity with it, the time available for inquiry, and the ease (or difficulty) of access to the requisite information.'" *Alston v. Speigel (In re Ames)*, 993 F.3d 27, 34 (1st Cir. 2021) (citing *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1425 (1st Cir. 1992); *see also CQ Int'l Co. v. Rochem Int'l, Inc., USA*, 659 F.3d 53, 61 (1st Cir. 2011) ("A showing of at least culpable carelessness is required before a violation of the Rule can be found.").

This objective standard applies to frivolous filings by pro se litigants as well as by attorneys. *See Chien v. Skystar Bio Pharm. Co.*, 2009 U.S. Dist. LEXIS 71985, at *5-6 (D. Conn. Aug. 12, 2009). Indeed, pro se parties are not exempt from sanctions for violating Rule 11. *See, e.g., Lefebvre v. Commissioner*, 830 F.2d 417, 420 (1st Cir. 1987) ("Although a pro se litigant's relationship to the court is clearly different from that of an attorney, virtually every circuit has entertained sanctions… against pro se taxpayer-appellants.") (internal citations omitted); *Eagle*

7

*Eye Fishing Corp. v. United States Dep't of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994) ("While courts have historically loosened the reins for pro se parties, the right of self-representation is not a license not to comply with relevant rules of procedural and substantive law.") (internal citations and punctuation omitted); *Azubuko v. MBNA Am. Bank*, 396 F. Supp. 2d. 1 (D. Mass. 2005) ("Rule 11 does not exclude *pro se* plaintiffs from possible sanction.").

Though courts may generally treat pro se parties more leniently than attorneys, courts are more likely to award sanctions against pro se parties who are familiar and experienced with the legal system. *See Pellegrini v. Analog Devices, Inc.*, 2006 U.S. Dist. LEXIS 726, at *8 (D. Mass. Jan. 11, 2006) (sanctioning pro se litigant who was "amply experienced in litigation, having previously sued Texas Instruments for infringement."); *Chien v. Skystar Bio Pharm. Co.*, 2009 U.S. Dist. LEXIS 71985, at *9 (D. Conn. Aug. 12., 2009) ("In general, courts have been more willing to sanction a *pro se* litigant where he or she has more familiarity or competence with the law, or has been put on notice as to the possibility of sanctions.").

Plaintiffs in this case substantially violated Rule 11(b) in two respects. First, they filed the FAC for improper purposes, including needlessly driving up litigation costs and harassing Mudrick Capital. Second, they failed to advance either legal claims warranted by existing law or nonfrivolous arguments for changing the law.

A. <u>Plaintiffs Filed the FAC for Improper Purposes</u>

Plaintiffs substantially failed to comply with Rule 11(b)(1). The form and content of a complaint can support an inference of improper purpose, particularly where the complaint is lengthy and laden with non-legal statements and assertions. *See Gorman v. Coogan*, 2004 U.S. Dist. LEXIS 24861, at *12-13 (D. Me. Nov. 24, 2004) (holding improper purpose found in "the filing of a ninety-three page purportedly 'verified' complaint replete with non-cognizable allegations, including subjective characterizations and outright vituperation"); *Koufos v. U.S.*

8

*Bank, N.A. (In re Koufos)* 2011 Bankr. LEXIS 4087, at *25-27 (Bankr. D. Mass. Oct. 21, 2011) (holding that a complaint violated a bankruptcy code provision identical to Rule 11(b)(2) in part because "it contains innuendo, invective, hearsay…, argument…, [and] nine counts of the Complaint are directed at all the Defendants, without specificity").

Here, as the Court observed, the FAC is "extraordinarily lengthy, confused, rambling, and discursive. It also fails to allege which particular claims are asserted against which particular defendants and why." D.E. 220 at 8. Its over 400 paragraphs are a "sprawling and largely impenetrable mass of allegations and claims." *Id.* at 1. Its 11 counts are scattershot, asserted variously against multiple defendants. For example, Count 5, labelled "Spoofing," shoehorns in allegations that Mudrick Capital manipulated securities, engaged in insider trading, and violated mail and wire fraud statutes. D.E. 20 at ¶ 494. However incoherent, these allegations are severe. Mudrick Capital was required to vigorously defend itself against each accusation, resulting in increased litigation expenses. As the Court observed, defendants, including Mudrick Capital, "have been forced to engage counsel, presumably at substantial expense, to review the complaint and prepare and file motions to dismiss." D.E. 220 at 15. Plaintiffs took no steps to avoid such expense. Far from it. They opted to pursue harassing and dilatory tactics instead. For example, rather than agreeing to Defendants' offer to stipulate to the filing of a Second Amended Complaint, Plaintiffs engaged in gamesmanship, ignoring the offer and seeking leave to amend only after Defendants had moved to dismiss the FAC. D.E. 194-1; D.E. 220 at 14 n.14.

Improper purpose also may be found where there is "tenacity" in continuing to press a claim, even in the face of notice that sanctions will be sought. *See Gorman v. Coogan*, 2004 U.S. Dist. LEXIS 24861, at *12-13 (D. Me. Nov. 24, 2004) ("One could reasonably infer intent to harass the Defendants and/or needlessly increase their cost of litigation as a result, *inter alia*, of …

9

tenacity in continuing to press even apparently frivolous claims in the face of service of the Motion for Sanctions."); *see also Chien v. Skystar Bio Pharm. Co.*, 2009 U.S. Dist. LEXIS 71985, at *5-6 (D. Conn. Aug. 12, 2009) (sanctioning *pro se* plaintiff who had been put on notice by Defendants that they would seek sanctions).

Here, Plaintiffs knew they could be sanctioned and tenaciously pursued their claims anyway. They were "made aware of the deficiencies of the amended complaint—not by the Court, but by the 12 separate filings of defendants, each of which pointed out multiple defects." D.E. 220 at 13. Plaintiffs were specifically put on notice that they may be subject to sanctions. They were noticed by the PSLRA itself, because "sanctions in the PSLRA context can never… come as a surprise" given that the statute requires the Court to make findings regarding compliance with Rule 11. *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d. Cir. 2009). And Mudrick Capital further notified Plaintiffs of its intent to seek its fees through its Motion to Dismiss. Mudrick Capital identified sanctionable deficiencies in the FAC and informed Plaintiffs and the Court that "Mudrick Capital intends to submit a motion seeking its attorney's fees and/or other sanctions at the appropriate time." D.E. 176 at 20. Rather than withdraw their claims, however, or even seek to streamline them, Plaintiffs doubled down. They filed a gargantuan Second Amended Complaint—without leave of Court—that remedied none of the FAC's deficiencies. Instead, it compounded those deficiencies, adding over 1,000 pages of text in the same rambling and conspiratorial style. D.E. 211. Accordingly, the Court should infer that Plaintiffs pursued their defective claims for improper purposes.

B.   The FAC Failed to Advance Legal Claims Warranted by Existing Law or By Nonfrivolous Arguments for Changing the Law

Plaintiffs substantially failed to comply with Rule 11(b)(2) because they used the FAC to advance claims with no basis in existing law, and because they admitted that they lacked non-frivolous argument for extending, modifying, or reversing existing law.

In the FAC, Plaintiffs asserted frivolous claims against Mudrick Capital. They appeared to allege that Mudrick Capital committed (1) securities fraud in violation of the Securities Exchange Act ("Exchange Act") § 10(b), (2) violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), and (3) insider trading under the Exchange Act. D.E. 176, p. 5. The insider trading claim required the Plaintiffs to adequately plead a predicate act of securities fraud. D.E. 176 at 15 (citing *Carney v. Cambridge Tech. Partners, Inc.*, 135 F. Supp. 2d 235, 243 (D. Mass. 2001). As this Court held, the Plaintiffs failed to allege any of the facts required to state a claim of securities fraud pursuant to the PSLRA. Specifically, they failed to "identify the alleged misrepresentations or omissions," to disclose "when [Plaintiffs] acquired their securities," and "to plead scienter with particularity." D.E. 220 at 9.

Plaintiffs also attempted to plead securities fraud as a predicate act for RICO. FAC ¶ 479. That attempt was fundamentally defective because, as this Court noted, the PSLRA expressly forbids using securities fraud as a predicate act for a civil RICO claim. D.E. 220 at 11.

Plaintiffs have removed any doubt that their claims were objectively frivolous—and that they knew those claims were objectively frivolous—when they filed their untimely fifty-seven page PSLRA Memorandum D.E. 212. In that filing, Plaintiffs acknowledged the PSLRA's elevated pleading standards. They admitted that "the PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter." *Id.* at 33. They went on to note, "the standards under the PSLRA are more stringent than those

11

under [Rule 9]. While Rule 9(b) allows a party to aver generally a defendant's condition of mind, under the PSLRA the complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at 34. Plaintiffs also acknowledged that Congress implemented those standards, "to curb frivolous lawsuits and reduce the burden on courts and defendants." *Id.* at 6. But Plaintiffs did not claim to meet those standards. Instead, they argued that they should not have to. They proposed "Amendments to the PSLRA" including "Reducing Pleading Standards." *Id.* at 52. In other words, Plaintiffs acknowledged that there was no way they could meet the PSLRA's statutory pleading standards unless the Court ignored them or overruled them. Of course, the Court can do neither. Asking the Court to exempt them from the law because they disagree with it is not a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." It is as frivolous as can be.

Moreover, Plaintiffs, in their PSLRA Memorandum, demonstrated their "familiarity" with the relevant subject matter and that they had "access to the requisite information." *Alston*, 993 at 34. They also underscored, as this Court recognized, that they are not "unsophisticated litigants" D.E. 220 at 13. As the Court confirmed, plaintiff Matthew stated in the original complaint that he was "currently in Law School," and Plaintiffs had separately filed a complaint against the Securities and Exchange Commission, FINRA, Department of Justice, and President Biden concerning many of the same allegations recycled in the FAC. D.E. 220 at 14-15. Given Plaintiffs' apparent knowledge, their state of mind in certifying the FAC goes beyond "culpable carelessness." Plaintiffs knowingly made these allegations. They "blithely ignore[d] clear, widely available pleading requirements." *Alston*, 993 at 36. As such, their conduct meets the objective standard of frivolity and warrants sanction.

### IV. The Court Should Award Mudrick Capital Its Reasonable Attorneys' Fees

Mudrick Capital asks the Court to award it $150,049 in reasonable attorneys' fees for 197.2 hours of work in this action. The Court has the discretion to decide what amount of attorneys' fees is reasonable. *NuVasive, Inc. v. Day*, 77 F.4th 23, 31 (1st Cir. 2023). Courts in this Circuit use the "lodestar" method of determining reasonable fees. *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). The lodestar is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The District Court "calculates the time counsel spent on the case, subtracts duplicative, unproductive or excessive hours, and then applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Gay Officers Action League*, 247 F.3d at 295.

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. Such evidence can be "contemporaneous time records supporting the hours worked and testimony as to the prevailing market rate for fees in the relevant community." *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 610 (1st Cir. 1985). Some "degree of redaction based on privilege is permitted" so long as the Court can determine the reasonableness of the fees requested. *RFF Family P'ship, LP v. Link Dev., LLC*, 2015 U.S. Dist. LEXIS 42186, at *10-11 (D. Mass. March 15, 2015).

A table listing in chronological order time entries for all fees claimed, identifying the timekeeper, date of service, and amount billed, with a detailed description of the work performed is attached as <u>Exhibit B</u> to the contemporaneously filed Declaration of Kenneth S. Leonetti, the lead lawyer for Mudrick Capital in this matter. Some of the task descriptions are partially redacted for privilege. *See* Leonetti Decl. ¶ 4. The fees sought by Mudrick Capital are only those actually billed to it by its counsel at Foley Hoag. *Id.* Those fees were based on Foley Hoag's time charges,

which in turn were based on contemporaneous time records. *Id.* The applicable billing rates are set forth in the Leonetti Declaration. *Id.* ¶ 10.

The amount of attorneys' fees that Mudrick Capital requests is reasonable. As set forth in the Leonetti Declaration, Foley Hoag undertook numerous steps to ensure that the work for Mudrick Capital was done efficiently and in a cost-effective manner. The matter was staffed leanly, with only three attorneys, at different levels of seniority. Leonetti Decl. ¶ 6. The most labor-intensive work was undertaken by the more junior attorneys. *Id.* ¶ 7. Foley Hoag would routinely write off or write down certain time before billing Mudrick Capital. *Id.* ¶ 8. In addition, Mudrick Capital avoided duplicating the efforts of counsel to the co-defendants in this matter, particularly with respect to opposing the numerous frivolous motions filed by Plaintiffs. *Id.* ¶ 9. Instead, work by its counsel was often in the nature of reviewing draft pleadings before signing off on joint filings. *Id.* Mudrick Capital also seeks only fees billed through June 18, 2024. *Id.*, ¶ 4, Ex. B. Mudrick Capital does not seek fees for time spent preparing this Motion. Further, Foley Hoag's rates are customary, reasonable, and comparable to those of its peer firms in Boston. *Id.* ¶¶ 11-12.

## Conclusion

Wherefore, Defendant Mudrick Capital respectfully requests that the Court enter an order granting it sanctions in the amount of $150,049, such amount representing the attorneys' fees it has reasonably incurred in defending itself in this action, and grant such other and further relief as is just and proper.

Dated: July 30, 2024

/s/ *Kenneth S. Leonetti*
Kenneth S. Leonetti (BBO # 629515)
Mark Finsterwald (BBO # 669218)
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA  02210
Telephone: 617-832-1000
Facsimile: 617-832-7000
kleonetti@foleyhoag.com
mfinsterwald@foleyhoag.com

Attorneys for Defendant Mudrick Capital

### CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2024, this document is being filed electronically using the Court's CM/ECF system, which will send notifications of this filing to all registered participants. A copy of the foregoing will also be sent via electronic mail to Plaintiffs.

*/s/ Kenneth S. Leonetti*
Kenneth S. Leonetti