**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| A. MATHEW, J. AFFHOLTER,<br><br>     Plaintiffs,<br><br>     v.<br><br>CITIGROUP GLOBAL MARKETS, CITADEL SECURITIES LLC, FTX, ALAMEDA CAPITAL, ANTARA CAPITAL, NEW YORK STOCK EXCHANGE, SUSQUEHANNA INTERNATIONAL GROUP, MUDRICK CAPITAL, VIRTU FINANCIAL, FOX BUSINESS, NASDAQ, HYCROFT MINING HOLDING CORPORATION, GOLDMAN SACHS GROUP, AMC ENTERTAINMENT, DTCC, FINRA. NYSE, D.F. KING, B. RILEY, WEIL GOTSHAL AND MANGES, GRANT EISENHOFER, MIRIAM TAUBER LAW OFFICES, MARK RUBENSTEIN, DENNIS DONOGHUE, MOELIS AND CO., ABN AMRO, ESMA, EUROCLEAR, B3 BANCO, CM-EQUITY, INTERACTIVE BROKERS, APOLLO GLOBAL MANAGEMENT, MORGAN STANLEY, BARCLAYS, HSBC, J.P. MORGAN, ALLEGHENY COUNTY PENSION FUND, BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP, CIM INVESTMENT MANAGEMENT, BANK OF AMERICA/ MERRILL LYNCH, UNKNOWN DEFENDANTS,<br><br>     Defendants. | Case No. 23-cv-12302 |

**MUDRICK CAPITAL'S REPLY IN SUPPORT OF ITS**
**MOTION FOR REASONABLE ATTORNEYS' FEES**

Pursuant to leave of Court granted on September 17, 2024, Defendant Mudrick Capital

Management L.P. ("Mudrick Capital") submits this reply in support of its Motion for Reasonable

Attorneys' Fees (D.E. 223-225).

Under the Private Securities Litigation Reform Act ("PSLRA"), Mudrick Capital is presumptively entitled to recover its reasonable attorneys' fees if the Court finds that Plaintiffs violated "any requirement" of Fed. R. Civ. P. 11(b) in connection with their First Amended Complaint. 15 U.S.C.S. § 78u-4(c)(2) – 78u-4(c)(3). Mudrick Capital explained in its fee motion how plaintiffs violated Rule 11(b) by acting for improper purposes and by failing to advance claims warranted by existing law or supported by nonfrivolous arguments for changing the law. *See* D.E. 224.

On August 1, 2024, Plaintiff A.P. Mathew filed his opposition to Mudrick Capital's motion, but that opposition did not address most of Mudrick Capital's arguments. D.E. 226.[1] Mr. Mathew does not appear to contest Mudrick Capital's argument that plaintiffs failed to advance claims warranted by existing law or supported by nonfrivolous arguments for changing the law. Nor does he dispute that the fees Mudrick Capital seeks to recover are reasonable.[2] Rather, Mr. Mathew appears to contest only whether plaintiffs presented their first amended complaint for improper purposes, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. He largely bases his arguments on speculative accusations about an unconfirmed SEC investigation, a so-called "bust out" scheme, and AMC's investment in Hycroft Mining. Many of his allegations were not in plaintiffs' voluminous first amended complaint, and some apparently were not in their gargantuan second amended complaint.

---

[1] Plaintiff Jordan Affholter did not sign Mr. Mathew's Opposition. *See* D.E. 226 at 10. Mr. Affholter has not separately responded to Mudrick Capital's Motion for Reasonable Attorneys' Fees.

[2] Mr. Mathew has forfeited his opportunity to address these issues. He is not entitled to file a sur-reply in response to this submission without leave of Court. *See* Local Rule 7.1(b)(3)

On August 20, 2024, Mudrick Capital moved for leave to submit a reply.  D.E. 227.  The next day, Mr. Mathew filed an opposition to the motion for leave and asked the Court to "reconsider" yet more fact assertions.  D.E. 228.[3]  These additional arguments do not address the core issue either – whether plaintiffs failed to advance claims warranted by existing law or supported by nonfrivolous arguments for changing the law – and, as such should not factor into whether a fee award is required under the PSLRA.

The Court dismissed this action because, among other reasons, plaintiffs failed to state a claim upon which relief can be granted.  D.E. 220 at 9-12.  The Court listed five failures to state a claim, including plaintiffs asserting civil claims under criminal mail and wire fraud statutes and asserting a civil RICO claim based on securities fraud in violation of the PSLRA.  *Id.* at 10-12.  The Court also noted that, with respect to the RICO claim, "[d]espite more than 200 pages of allegations, plaintiffs fail to state a clear and definite statement of their losses."  *Id.* at 11 n.12.  Further, the Court made clear that, "[b]y identifying certain obvious issues, the Court does not mean to suggest that other claims are not also problematic and would survive a motion to dismiss."  *Id.* at 10 n.11.

Because plaintiffs' claims failed as a matter of law, their fact assertions are, at most, marginally relevant to whether they violated Rule 11.  In any event, the allegations Mr. Mathew makes in his opposition are baseless.  He begins by asserting that "[t]he actions of Mudrick during the HYMC transaction were so egregious that it warranted an SEC investigation."  Opp'n at 2.  This assertion appears to be new.  Mr. Mathew cites only a "Disclosure Insight" report, dated June

---

[3] Pursuant to Local Civil Rule 7.1(a)(2), Mudrick Capital's counsel contacted Mr. Mathew by email and asked if he objected to Mudrick Capital's motion for leave.  Mr. Mathew responded that he had "no objections," D.E. 227 at 4, yet he proceeded to file a pleading in response to that motion.

17, 2024, the day this case was dismissed. *Id.* Mr. Mathew provides a link to the report, but almost all of it is behind a pay wall. *Id.* n.1. Only one sentence is visible. It says that "meta data and 20 pages of records" show that "AMC Entertainment was involved in an undisclosed 2022-2023 SEC investigation into transactions between itself, Mudrick Capital, and Hycroft Mining (HYMC), that were atypical relative to the company's business and history." *Id.* Mr. Mathew does not provide any further evidence about that purported investigation, much less any evidence that Mudrick Capital was suspected of any wrongdoing. Instead, he merely asserts that "[i]t is obvious that the SEC read the Plaintiff's complaint in it is [sic] entirety and saw exactly what the Plaintiff saw, and then acted on it by initiating an investigation." *Id.* at 2. He cites no support for that assertion whatsoever. It is just self-aggrandizing speculation. He then says "[a]s far as we know, the investigation is still active and ongoing." *Id.* In other words, Mr. Mathew casts aspersions first and asks questions later, if at all. That is emblematic of the groundless invective that pervaded plaintiffs' pleadings and unfairly caused Mudrick Capital to have to spend the legal fees it now seeks to recover.

Mr. Mathew then asserts that "Mudrick executives, dressed casually, took notes and photographs in a clandestine manner" at shopping malls pursuant to a "strategy to short AMC into bankruptcy, leveraging AMC's inclusion in CMBX." Opp'n at 2-3. He attempts to link this alleged "strategy" with a "broader 'bust out' scheme by Apollo Global Management and Mudrick Capital." *Id.* at 3. He claims that these allegations were "evidenced in the Second Amended Complaint." *Id.* at 2. That complaint was never properly before the Court and could not excuse any Rule 11 violations with respect to the First Amended Complaint. Regardless, Mr. Mathew's assertions that Mudrick Capital had a "strategy" to "bankrupt" AMC and participated in a "bust out scheme" are false and defamatory. Indeed, Mr. Mathew himself seems uncertain about them,

4

as he hedges his language, referring to what hypothetically "could impact CMBS structures," and what firms "can acquire" to "position[] themselves for profitable restructuring." *Id.* at 3. In other words, he is speculating. By speculating, he confirms, rather than refutes, that plaintiffs violated Rule 11.

Mr. Mathew further speculates about transactions relating to Hycroft Mining. He asserts that AMC's CEO invested in Hycroft "influenced heavily by his personal ties with Jason Mudrick of Mudrick Capital" and that the investment "appeared as a bailout for Mudrick." Opp'n at 6. He concludes the discussion by asserting that "[t]his situation has sparked criticism over potential conflicts of interest," and "underscores concerns about corporate governance and ethical decision-making within AMC." *Id.* Such commentary says nothing about Mudrick Capital breaking any law or causing any harm to plaintiffs. Mr. Mathew is entitled to vent his frustrations with Wall Street, but the law does not allow him to do so by filing a meritless lawsuit against Mudrick Capital and making it spend legal fees defending itself. That is precisely the behavior that the PSLRA was meant to deter, and it does so by enabling aggrieved defendants like Mudrick Capital to recover their reasonable fees.

Finally, it bears emphasis that none of these allegations are remotely relevant to the actual claims asserted by plaintiffs in the First Amended Complaint. In other words, the First Amended Complaint, standing alone and without regard to these allegations, was frivolous and failed to advance claims warranted by existing law.

### Conclusion

For the reasons stated above, and in its Motion for Reasonable Attorneys' Fees, Mudrick Capital asks that the Court grant it sanctions in the amount of $150,049 in reasonable attorneys' fees and grant such other and further relief as is just and proper.

Dated: September 30, 2024

/s/ *Kenneth S. Leonetti*
Kenneth S. Leonetti (BBO # 629515)
Mark Finsterwald (BBO # 669218)
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA  02210
Telephone: 617-832-1000
Facsimile: 617-832-7000
kleonetti@foleyhoag.com
mfinsterwald@foleyhoag.com

Attorneys for Defendant Mudrick Capital

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2024, this document is being filed electronically using the Court's CM/ECF system, which will send notifications of this filing to all registered participants.  A copy of the foregoing will also be sent via electronic mail to Plaintiffs.

*/s/ Kenneth S. Leonetti*
Kenneth S. Leonetti

6